[Crim. No. 5275.   Second Dist., Div. Three.   June 13, 1955.]

THE PEOPLE, Respondent, v. JAMES PETER VAN EYK, Appellant.

Gladys Towles Root for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was charged with violation of section 11500 of the Health and Safety Code in that on November 20, 1953, he unlawfully had heroin in his possession. He admitted allegations in the information that on or about June 11, 1952, he had been convicted in the Superior Court of Los Angeles County of violation of said section 11500, a felony; and that on or about July 3, 1952, he had been convicted in the Superior Court of Los Angeles County of violation of section 503 of the Vehicle Code, a felony. In a trial by jury, he was found guilty as charged. He appeals from the judgment.

Appellant contends that the court erred (1) in giving a certain instruction regarding confessions; (2) in failing to give certain instructions regarding circumstantial evidence; and (3) in sustaining objections to two questions asked by appellant on cross-examination.

The parties stipulated that Clifford C. Cromp was an expert chemist; he would testify that on November 23, 1953, he received People's Exhibit 1 (a sealed envelope); he opened the envelope and found therein (1) a green plastic vial containing 43 capsules of light brown powder, and (2) a cardboard box containing a number of empty capsules; he made an examination of five of the capsules containing the powder, and in his opinion they contained heroin.

Officer Kelly testified that on November 20, 1953, about 2:45 p. m., he and Officers Farrell and Matson went to a certain apartment in Los Angeles. Farrell knocked on the door. When appellant partially opened the door, the officers pushed the door open and entered the living room. Officers Kelly and Farrell immediately took one Aguilar into custody. They had a struggle with him on a sofa, and he spat a bindle of heroin from his mouth. During this time Officer Matson had appellant under restraint—he had some kind of hold around appellant's body. The officers then stood appellant and Aguilar against the wall—with their backs against the mantel. Appellant reached into his right front pants' pocket, took out a green vial and threw it into an overstuffed chair which was about 2 feet from him. Officer Kelly picked up the vial. Appellant then raised his right hand to the level of his shoulder, and Kelly struck appellant in the mouth with his fist, pushed him against the mantel, and placed handcuffs on him. The officers then started to search the room. Kelly found a box of empty capsules on a table. He asked appellant if he had "any more narcotics in the place." Appellant replied "No, that is all I have right here, the vial." He also

said "I will show you where I did have this vial." Appellant then took them into the bathroom, showed them a little door and said "That is where my cache was." Aguilar, in answer to questions by Kelly, stated that the box of empty capsules was not his, but that the bindle he spat was his. He did not ask Aguilar about the vial. He (Kelly) placed the items, which he had obtained in the room, in the envelope and sealed it. He then took it to the laboratory and turned it over to Cromp. Kelly testified further that after they took appellant to the police station, he (Kelly) and Farrell had a conversation with appellant; appellant stated that the 43 capsules were his, and that he would put "it" in writing. Farrell asked appellant who his peddler was, and appellant stated "I buy my own. I go to Mexico and get my own stuff." Appellant reduced the substance of this conversation to writing and signed it. The writing was then filed, but he (witness) has been unable to find it.

Officer Matson testified that immediately upon entering the apartment he "grabbed" appellant by the wrists and held them behind appellant's back while the other officers were struggling with Aguilar. He then turned him over to Officer Kelly. When he first saw the green vial it was "coming" from appellant's pocket; he saw it coming from appellant's hand and saw it land in an overstuffed chair. He saw Officer Kelly pick it up. After appellant and Aguilar were handcuffed they went with him and Officer Kelly into a clothes closet where appellant showed them a panel. The panel was open, and appellant said that was where he kept the entire cache.

Officer Farrell testified that he went to the apartment with Kelly and Matson on November 20, 1953. He first saw the green vial on an overstuffed chair in the living room, and he saw Kelly pick it up. He was present when Kelly asked appellant if he had any more narcotics at that place, and appellant stated "This is all of my cache. I do not have any more." He (witness) had a conversation with appellant about 4:30 that day at the police station. Officer Kelly was present during part of the conversation. He (witness) showed the vial and the 43 capsules of heroin to appellant, and asked appellant where he had obtained them. Appellant stated that he purchased them in Mexico. Appellant then reduced the substance of the conversation to writing and signed it. After the conversation the vial was marked and placed in an envelope.

Appellant testified that he rented the apartment, and he

lived there with his mother. On November 20, 1953, Aguilar came to the apartment and told him that he (Aguilar) wanted to give appellant "the right to all of the stuff there." Appellant replied, "I cannot do it." When the officers came, appellant opened the door. Officers Kelly and Farrell grabbed Aguilar. Officer Matson grabbed appellant and held him. Appellant then looked around and saw the box of empty capsules for the first time—it was on the coffee table. The officers put him and Aguilar against the wall. There was no mantel or anything that resembled a mantel in the room. Officer Kelly gave appellant a "quick shakedown," and handcuffed appellant's right hand to Aguilar's left hand. Appellant saw Officer Kelly take the green bottle from the chair—that was the first time he saw the bottle. Officer Kelly asked appellant if the bottle was his, and appellant said "It is not mine." Officer Kelly struck appellant and cut his lip. Appellant went with the officers into the bathroom and into a closet in the bedroom. He did not say anything about keeping heroin in the apartment, and he did not use the word "cache." He signed a confession, at the police station, to the effect that the capsules belonged to him. Officer Kelly dictated the confession, and appellant wrote it in longhand. He wrote it because Officer Kelly said that they were going to "throw" appellant's wife in jail, but that if appellant would write the statement they would not "pick up" his wife. He testified further that the 43 capsules did not belong to him; they were not in his clothing at any time; and that he did not throw the bottle into the chair.

Aguilar, called as a witness by defendant, testified that on November 20, 1953, he went to appellant's apartment about 1 p. m. He took some merchandise in a big sack with him. The green vial and a hypodermic kit were in the sack. He had found the vial with the heroin capsules in it. He also had a box of empty capsules, an "outfit," and one or two caps of heroin in a paper. When the officers came into the apartment he got the outfit out of his pocket, and he laid the box of empty caps on a coffee table. He had the green vial in his left hand and he grabbed the paper and ran toward the window. He put the paper of heroin in his mouth. He tried to throw the vial behind the chair, but he did not know where it fell. Officer Kelly picked up the vial and asked appellant if it belonged to him. Appellant said "No," and Officer Kelly hit appellant in the face. He (Aguilar) told the officers that the "two" papers were his and that the

heroin in the vial was his. He had pleaded guilty to the charge of possession of the two papers, and he had been sentenced. He testified further that he did not tell his probation officer that he discovered a jar of heroin in appellant's apartment and attempted to steal some of it; and he did not tell him that he did not own the jar of heroin.

A probation officer testified, upon rebuttal, that on March 9, 1954, Aguilar told him that when he went to appellant's apartment he discovered that appellant had a jar of heroin; he tried to steal some of the heroin when appellant was not looking; he took heroin from one piece of paper and put it in another piece of paper and, as he was returning the empty paper to the jar, the officers entered the apartment.

Appellant contends, as above shown, that the court erred in giving an instruction regarding confessions. In the instruction referred to there was a proper definition of a confession, and then there was a statement that: "If under my instructions you find that a voluntary confession was made, you are the exclusive judges as to whether or not the confession was true; and in deciding that question you should consider all the circumstances connected with the making of the statement, as shown by the evidence. [If you should find that a confession was false in any particular, it remains, nevertheless evidence for your consideration in connection with all other evidence in the case, to be given such significance and weight as your judgment may determine.]" Appellant asserts that the portion of the instruction which appears in brackets was held to be erroneous in *People* v. *Ford*, 89 Cal. App.2d 467 [200 P.2d 867]. The instruction in that case was different from the instruction in the present case. The instruction in the Ford case stated that "if you find that the confession was false *either entirely or in part* it remains nevertheless for your consideration, to be given such significance as your judgment may determine under instructions I shall shortly give you concerning false statements made by a person accused of a crime." (Italics added.) ■ Of course, as indicated in that case, if the confession was entirely false there could be no reasonable theory under which it could be considered as an indication of guilt. In *People* v. *Ybarra*, 127 Cal.App.2d 74 [273 P.2d 284], an instruction identical with the one given in the present case was held to be proper. It was stated therein (p. 78) that the instruction in the Ford case had been "revised to its present form." Also it was stated therein (p. 78): "What it [instruction in present form] does say is that if the jury should find the confession

untrue in some particular they need not reject the entire confession; that they still had for consideration the portion of the confession they believed to be true." In the interests of clarity, the instruction needs further revision. The statement in the Ybarra case, which explains the language of the instruction, indicates that further revision is needed. It cannot be said, however, in view of the evidence in the present case, that it was reversible error to give the instruction.

Appellant also contends that the court erred in failing to give three instructions requested by appellant on the subject of circumstantial evidence. One of the requested instructions was to the effect that if evidence is susceptible of two reasonable constructions, one pointing to guilt and the other to innocence, the latter construction should be adopted. Another of the instructions was to the effect that the jury may not find defendant guilty on circumstantial evidence alone unless the circumstances are irreconcilable with any other rational conclusion. The other instruction was to the effect that when the People's case rests entirely or chiefly on circumstantial evidence, and in any case before a jury may find defendant guilty based solely on such evidence, each fact essential to the chain of circumstances to establish guilt must be proved beyond a reasonable doubt. Appellant argues that those instructions should have been given for the reason that a large part of the People's case depended upon circumstantial evidence. The testimony of Officers Kelly and Matson to the effect that appellant took the vial from his pocket and threw it into a chair was direct evidence that appellant had the heroin in his possession. ██ "The court is not required to instruct upon the rules of law applicable to circumstantial evidence when it is incidental to and corroborative of direct evidence." (*People* v. *Agajanian,* 97 Cal.App.2d 399, 403 [218 P.2d 114]; *People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805]; *People* v. *Lapara,* 181 Cal. 66, 70 [183 P. 545]; *People* v. *Monge,* 109 Cal.App.2d 141, 144 [240 P.2d 432].) In view of the evidence herein it was not error to refuse to give the requested instructions.

Appellant contends further that the court erred in sustaining objections to two questions asked by appellant on cross-examination. ██ Officer Kelly testified on cross-examination that when Officer Matson placed appellant under restraint, appellant's back was against Officer Matson's chest, and that he did not know the exact position of appellant's arms. Appellant then read testimony of the officer from the

transcript of the preliminary examination to the effect that while Officer Matson had appellant under restraint he had appellant "pinned with his arms back," with his elbows thrust backward, and his hands to the front with both palms open. Appellant asked the officer if he had given the answers (just read by appellant) and the officer said, "I probably did." Appellant then asked the following question: "And they were true at the time you gave them, were they?" An objection by the People on the ground that it was not a proper question was sustained. Appellant asserts that the testimony at the preliminary examination was read for the purpose of impeaching the witness, and that appellant was entitled to receive an answer to that question. It is to be noted that the officer did not say that he did so testify, but that he probably did so testify. It does not appear that the answer would have been favorable to appellant. Furthermore, the position of appellant's hands while Officer Matson was holding him was not of significance—it is not asserted that the vial was thrown while Officer Matson was holding him. The alleged throwing of the vial by appellant occurred thereafter while he was in the custody of Officer Kelly. As stated in *People* v. *Southack,* 39 Cal.2d 578 [248 P.2d 12], at page 590, "Control of cross-examination of a witness as to which of his conflicting statements is true should be in the sound discretion of the trial judge." It cannot be said that the trial court herein abused its discretion in sustaining the objection to said question above quoted. ▬ The other question, referred to in this contention, was asked Officer Matson on cross-examination, and was as follows: "Have you discussed this case or your testimony in this case with Officer Kelly before you testified here today?" An objection by the People, on the ground that it was not a proper question and that it was incompetent, irrelevant, and immaterial, was sustained. Appellant argues that the question pertained to the credibility of the witness. The objection should not have been sustained, but the ruling did not constitute reversible error. There was no offer of proof, and there was nothing to indicate that the answer to the question would have been favorable to appellant.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 13, 1955.