[Crim. No. 2135. Second Appellate District, Division Two.—January 19, 1932.]

THE PEOPLE, Respondent, v. BERNICE EMME, Appellant.

W. Frank Shelley for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

FRICKE, J., *pro tem.*—Appellant was convicted of the crime of assault with a deadly weapon, committed upon her husband, Frank Emme. The only plea entered by appellant was that of not guilty. One Fred R. Pierce was originally joined as a co-defendant, but at the conclusion of the case in chief of the state the court, on motion of the district attorney, dismissed the information as to Pierce, the evidence being insufficient to sustain a conviction against him.

It appears that appellant and Frank Emme were married in 1920 and about two years later took into their home a baby girl, whom they treated as their own, though no proceedings for adoption were ever taken. In February, 1931, the husband obtained an interlocutory decree of divorce. Thereafter, on February 25, 1931, Frank Emme, who had been appointed the guardian of the child by the superior court, placed her in a convent in Pomona. Shortly before midnight on April 18, 1931, appellant accosted the complainant, Frank Emme, as he was about to enter his automobile, and after some conversation as to whether he would take her home she got into the back seat of the car. After the car had started there was some conversation concerning the child in which the complainant told appellant that she

could not see the child. Thereupon appellant called complainant a vile name, told him she had a gun in her hand and that she would blow out his brains if he made a false move, and ordered him to drive to Pomona and get the child. He argued with her and she pressed a loaded revolver against his back and ordered him to drive faster. Arriving in front of a restaurant the complainant stopped his car and attempted to get out, whereupon appellant pulled the trigger of the gun, which she had concealed in a glove, but the weapon failed to function. Complainant then jumped out of the car and ran into the restaurant, and as he did so appellant fired a shot at him, but which missed him. After complainant arrived inside the building appellant, who had followed close behind him, fired another shot, but again missed. At this point she was overpowered with the assistance of bystanders and the revolver taken away from her. Appellant testified that she had secured the revolver three days before the day of the shooting, that she was told and believed that it was loaded, that she discharged it in the direction of the sidewalk after the car stopped at the restaurant, but denied having pointed the weapon at the complainant. As to the second shot, fired inside the restaurant, appellant confessed a lack of memory. It is, however, thoroughly established that the first shot broke the glass in the front of the restaurant toward which complainant was running, and the testimony of several of the persons in the restaurant at the time conclusively shows that appellant aimed and shot at the complainant while he was running away from her and toward the rear of the restaurant. Any verdict other than a verdict of guilty would have been a miscarriage of justice.

Appellant contends that the prosecutor was guilty of misconduct because in his opening statement to the jury he stated theories as though they were facts. The transcript fails to support any claim of misconduct in the making of the opening statement. The district attorney specifically informed the jury that his statement was not to be considered by them as evidence, and limited his remarks to a fair statement of the evidence which the state intended to produce. In setting forth the transactions and occurrences of the night in question and stating his intention and ability

to prove the circumstances the prosecutor was well within the rule governing opening statements. (*People* v. *Clayberg*, 26 Cal. App. 614, 619 [147 Pac. 994].)

 The statements of the prosecutor and the instructions of the court to the effect that the extrajudicial statements of appellant could not be considered for any purpose whatever as to her co-defendant were not only not misconduct, as appellant claims, but were proper statements of the law for which the district attorney and the court should be commended. The rule that extrajudicial statements of a defendant, jointly tried with a co-defendant, are not to be considered as evidence against the co-defendant is too elementary to require citation of authority.

Appellant assigns as misconduct the fact that the district attorney made objections to the introduction of testimony which were sustained by the trial court and also made certain motions to strike which were granted. Had these rulings of the court been contrary to the law the incidents would have constituted errors of law, but not misconduct of the prosecutor. However, the rulings were proper. Among these assignments appellant complains because the court, upon objection being made, refused to permit appellant to introduce evidence tending to prove a defense of insanity. Counsel cites no authority and is apparently unaware that in a trial under the plea of "not guilty", the defendant "shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed" (Pen. Code, sec. 1026), and that evidence tending to prove insanity at that time is inadmissible. (*People* v. *Linton*, 102 Cal. App. 608 [283 Pac. 389]; *People* v. *Phillips*, 102 Cal. App. 705 [283 Pac. 821]; *People* v. *Lazarus*, 207 Cal. 507 [279 Pac. 145]; *People* v. *Leong Fook*, 206 Cal. 64 [273 Pac. 779]; *People* v. *Troche*, 206 Cal. 35 [273 Pac. 767].) Another complaint is that the court refused to admit evidence which "would have touched the heart of every woman on the jury" and which would "govern the sentence". Obviously the question of sentence or that of touching the hearts of jurors was not before the court, and such evidence was inadmissible on either theory. The court also properly excluded testimony offered to prove the causes leading to the separation of appellant and her husband.

Such evidence was irrelevant to the question as to whether the assault charged was committed.

An effort was made by the defense to prove that prior to being accosted by appellant the complaining witness had been visiting at the residence of his stenographer. The court sustained repeated objections to this line of questions on appellant's direct examination, and on motion of the district attorney struck out testimony to the same effect volunteered by appellant on her redirect examination. The rulings were correct. The evidence was irrelevant and obviously offered not as shedding light on the question as to whether the assault charged had been committed but in an attempt by innuendo to attack the character of the complainant, although counsel refers to this line of evidence as "her self defense".

Misconduct of the prosecutor is assigned because of an alleged misstatement of the evidence in his final argument as to the precise time of a conversation upon the first meeting of appellant and complainant on the night in question. Counsel at the trial addressed no objection to the court but spoke directly to the district attorney, calling his attention that there was no conversation at the time referred to in the argument. The prosecutor conceded the correction and thanked counsel, and proceeded to finish his argument. The misstatement of evidence, if it was a misstatement, was of so immaterial a matter that it could not have prejudiced the defendant. Furthermore, in the absence of an objection and request that the court instruct the jury to disregard the statement of the prosecutor the alleged misconduct cannot be considered on appeal. (*People* v. *Mintz*, 106 Cal. App. 725 [290 Pac. 93]; *People* v. *Dykes*, 107 Cal. App. 107 [290 Pac. 102]; *People* v. *Lewis*, 110 Cal. App. 381 [294 Pac. 22]; *People* v. *Hodges*, 116 Cal. App. 61 [2 Pac. (2d) 174].)

The statement of the district attorney that had the character witnesses known that appellant had acquired a loaded revolver several days prior to the day of the shooting they would not have testified to her character for peace and quiet was clearly within the scope of proper argument. Appellant's objection seems to be based on the theory that, though these witnesses may not have known of the revolver at the time of the shooting, they were well acquainted with

the facts before they took the witness-stand. We are not directed to any evidence that the witnesses possessed such knowledge. The reputation of a defendant for the traits of character involved in the offense charged is the reputation at the time of the offense.

Another assignment of misconduct is that the prosecutor referred to appellant by her surname only, and counsel quotes in the brief the question, "What conversation did you hear between Mr. Emme and Emme in Chilliville?" Consulting the reference to the transcript given in the brief we find that counsel has misquoted the record, which shows that the question was, "What conversation did you hear between Mr. Emme and *Mrs.* Emme?" (Italics ours.)

Appellant also assigns as misconduct the statement of the prosecutor that the reason appellant did not get over to the front seat of the automobile was on account of a brown transcript on the front seat. Had counsel read the transcript he would have discovered that this was the very reason given by appellant in her testimony at the trial for not getting from the back seat to the front seat. While a misstatement of the evidence by counsel in the heat of trial is often excusable, there is no excuse for counsel, preparing his brief with the transcript before him, to misrepresent to the court the actual testimony given at the trial or to falsely accuse his adversary with misstating the evidence in his argument to the jury. A lawyer will never, in his zeal for the cause of his client, so far forget himself as to indulge in false accusations against an honorable adversary or to state to a court that which he knows is not borne out by the record.

The charges by appellant's counsel, seeping throughout his brief, that "this so-called trial was a travesty on justice, grossly unfair and a great miscarriage of justice from start to finish", that "the trial was a one-sided farce", that the judge granted every motion made by the district attorney, "just or unjust", etc., *ad nauseam,* do not find even the flimsiest support in the record. The trial judge was most eminently fair and just and his rulings were correct. Nor can we find any just basis for criticism of the conduct of the district attorney who prosecuted the case. The guilt of the appellant was established with certainty by wholly

disinterested witnesses, strangers to the drama in the restaurant. The appeal is wholly without merit.

The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 3, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1932.