[Crim. No. 1730.   Third Appellate District.—October 26, 1940.]

THE PEOPLE, Respondent, v. SAM ALEXANDER, Appellant.

A. M. Mull, Jr., and Lawrence G. Dorety for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Defendant was convicted of an assault with intent to commit murder, and from the judgment of conviction and the order denying a new trial, this appeal is taken. For reversal it is urged that the evidence is insufficient to justify a conviction of an assault with intent to commit murder; that the court erred in excluding certain evidence; in giving and refusing to give certain instructions, and in denying a new trial.

Inasmuch as appellant devotes considerable attention to the claim of insufficiency of the evidence it is necessary to set forth the evidence in some detail.

Appellant and Mrs. Averil Alexander had been married for about ten years and were the parents of an eight-year-old daughter. Upon moving to Sacramento, Mr. and Mrs. Alexander established a telephone answering service, and by close attention they built up a business of some value. Mrs. Alexander obtained outside employment, but apparently put her earnings into the business. Except for the times that Mrs. Alexander could relieve him, appellant devoted his entire time to the business, which required a twenty-four hour attendance. By reason perhaps of this long confinement, appellant became morose and addicted to the excessive use of liquor, and the parties separated in November, 1939. December 15th, Mrs. Alexander obtained an interlocutory decree. On December 29th, the shooting hereinafter related took place.

After the separation the wife moved to an apartment in another part of the city taking the daughter with her, she having been awarded the temporary custody of the child.

About 8 o'clock in the evening of December 29th, appellant telephoned to his wife and asked if she would let the daughter go with him to see the outdoor Christmas trees. The wife objected, but finally agreed to ask the daughter if she cared to go. In this conversation, according to the testimony of the wife appellant said, " . . . Well, if you won't let me have her I am coming out there and murder you, and I am not fooling, I mean what I say." The daughter then came to the telephone and told her father she did not care to go with him. About a half hour later appellant appeared at the house where his wife and daughter were living. The front door opened into a hallway, to the left of which was a living room. A stairway enclosed by a balustrade led to an upper floor. A flight of three steps in the hallway and to the right of the front door, led up to a landing, then a turn left with nine steps to another landing, then another left turn and five steps brought one to the second floor. The door bell was answered by a Mr. Daniels who was in the living room, who invited appellant in, but he refused, saying he wished to speak to his wife. Mrs. Alexander came to the door but did not open the screen door. Appellant remained

standing on the porch near the railing about eight feet from the door. The discussion was resumed about the daughter accompanying appellant to see the Christmas trees and he asked that the daughter be called. Mrs. Alexander objected, saying she did not want the child to stand out in the cold, and asked appellant to come in. He then replied, "Averil, this is my last request to come out here and talk to me, or else,—" whereupon he put his hand in his overcoat pocket. He pulled out a revolver, and Mrs. Alexander turned and ran upstairs. She heard the screen door open, and after reaching the last five steps, she crouched on the stairs, and a shot rang out and a bullet passed near her head and imbedded itself in the wall on the other side of the stairway. Daniels, who was seated in the living room to the left of the hall, heard Mrs. Alexander running up the stairs and looked up and saw her on the stairs, and appellant standing in the doorway. He then heard the shot and saw appellant with the revolver in his hand. Daniels went toward the door and appellant told him to keep out of the trouble or he would be next. Daniels then kicked the door shut and jumped back into the living room. A Mrs. Kelsey, who was seated in the living room, heard Mrs. Alexander say, "Bud, you wouldn't," and heard her running up the stairs, and also heard Alexander say to Daniels, "Don't come any closer, or I'll get you too."

Appellant remained on the porch a minute or two and then left. The next evening Alexander was arrested in his room in a local hotel. At that time he gave the name of Adams to the officers. The gun was found in his possession. When asked about the shooting of the night before he said he had been having domestic troubles and had been drinking and asked if his wife was injured.

The foregoing constitutes a brief narrative of what occurred. It is the claim of appellant that he went to the home of Mrs. Alexander with the intention of committing suicide, and the shot intended for himself missed its mark and passed over Mrs. Alexander.

As pointed out by appellant the crime here charged requires the presence of two intents, first, the intent to commit a violent injury, which is a necessary part of the assault. (Sec. 240, Pen. Code.) To establish this intent criminal negligence may be shown, and there seems no doubt that that

element of the crime was established in the case. It is in establishing the specific intent to kill that appellant contends the People failed.

Appellant points to his testimony wherein he declared his intention in taking his gun from his pocket was suicide; that he did not intend to harm his wife, and he did not aim the gun at her. As to this line of testimony the jury could, and evidently did, entirely disbelieve him.

Furthermore, to show appellant did not intend to harm his wife, it is claimed appellant had the gun in his possession for over a month but had not attempted to use it, although his wife had left him and secured an interlocutory decree of divorce, and his daughter had apparently lost her affection for him. It is also claimed Mrs. Alexander was not particularly frightened by his speech or manner as he stood near the open door, and further it is pointed out only one shot was fired from a gun capable of firing six shots. Also, after firing the shot he made no immediate effort to escape, standing on the porch a minute or two before leaving. Even these facts, persuasive as they appear under the able presentation by counsel for appellant, are susceptible of interpretation, and the jury did not accept the view of appellant. The jury may have placed more emphasis upon the telephone message to Mrs. Alexander from appellant when he told her about a half hour before he arrived, "I am coming out there and murder you, and I am not fooling, I mean what I say." The jury may have recalled that appellant, before firing the shot, advanced about eight feet from the railing of the porch to a point near the door, and actually opened the screen door, and also, that as Mrs. Alexander crouched on the stairway near the second landing, the bullet came so close to her she felt the compression of the air. Appellant also said to his wife as he insisted she come out onto the porch to talk to him, "Averil, this is my last request to come out here and talk to me, or else,—" and then started to withdraw the revolver from his pocket. The remark to Daniels by appellant immediately after the shot was, "You keep out of this or you are next." Upon his arrest the next day he gave a fictitious name. When asked by the police why he did it, he did not then say he had tried to kill himself, but said he had been drinking or he wouldn't have done it, and that he had been having trouble with his wife, and then asked if she was injured. None of.

these acts are conclusively those of an innocent man. The jury saw appellant upon the stand, they heard the witnesses, and were amply supported by the evidence, if they believed it, in finding defendant guilty as charged.

As has often been said, an appellate court cannot substitute its judgment for the findings of the jury unless the evidence is so clearly false and unbelievable that reasonable minds may not differ upon its inherent improbability. We have no such situation here.

Appellant complains of the exclusion of certain evidence in some five or six particulars. One is that the defense should have been allowed to have shown that defendant carried on his business practically alone, and thereby became fatigued and susceptible to a mental breakdown, which might induce thoughts of self-destruction. This is of course remote and speculative.

Objection is made to the exclusion of two letters, one written to the wife which contained some memoranda in regard to the business, which had no bearing upon the question of suicide for which it was offered by appellant. The second memorandum was written by defendant a few hours after the shooting. It was addressed to a local undertaker and advised him about appellant's funeral. Neither could this be said to have been a suicide note, and was subject to further objection that it was a self-serving declaration. (*People* v. *Munro,* 14 Cal. App. (2d) 446 [58 Pac. (2d) 955]; 8 Cal. Jur., p. 105, sec. 198.)

Appellant also claims that the jury were not properly instructed in regard to the specific intent necessary to constitute the crime here charged. An examination of the instructions given, however, seems sufficiently clear upon that question. Among others, this was given:

"The material elements necessary to prove in the crime of assault with a deadly weapon with intent to commit murder are:

"One. That the assault was in fact committed with a deadly weapon.

"Two. That the assault was committed with malice aforethought and for the purpose of accomplishing a wilful, deliberate and premeditated killing, or was committed with malice aforethought under circumstances indicating to you an abandoned and malignant heart.

"Both elements must unite and if the prosecution fails to establish to a moral certainty and beyond a reasonable doubt any one of these elements, or if there remains in the minds of the jurors a reasonable doubt as to whether or not the prosecution has established both of said elements, then you must acquit the defendant Sam Alexander."

"If you believe from the evidence that the defendant Sam Alexander did not commit an assault upon the person of Averil Alexander with a deadly weapon with intent to commit murder or if you believe from the evidence that the defendant Sam Alexander did commit an assault upon Averil Alexander with a deadly weapon without the intent to commit murder, then it is your duty to find the defendant Sam Alexander not guilty of an assault with a deadly weapon with intent to commit murder."

"If you believe from the evidence that the defendant Sam Alexander intended to commit suicide and had no intent to assault Averil Alexander, and fired a gun with the sole intent to kill himself, then you must find the defendant not guilty."

"As to the intent or intention with which an act is committed, if you find that such act was committed, such intent or intention is a matter entirely within the province of the jury, who must, from a full and careful consideration of the testimony and from all of the circumstances connected with the commission of the act, arrive at a determination as to whether such act was committed with a criminal intent."

█ Appellant also claims that the district attorney in his opening statement to the jury stated that the prosecution would prove by two persons that the defendant said that he would make a better job of the shooting next time. No witnesses were produced to establish this fact.

In the absence of a positive showing of a deliberate attempt to misstate the case, such remark cannot constitute prejudicial misconduct. (*People* v. *Berryman*, 6 Cal. (2d) 331 [57 Pac. (2d) 136]; *People* v. *Emme*, 120 Cal. App. 9 [7 Pac. (2d) 183].) █ Also no objection was made to this remark nor was the alleged misconduct called to the attention of the court or jury at the close of the prosecution's case. We cannot assume that a public official deliberately injected false accusations in his opening statement. In the absence of any showing we must assume it was that officer's honest

belief that he would introduce such evidence. It may have been that the witnesses were not available or that owing to the development of the trial such evidence might by him have been deemed unnecessary and immaterial.

Some question also is raised as to the statement of the trial judge when, at the sentencing of the defendant, he stated that from a factual basis he did not know whether the defendant had the deliberate intent necessary to commit the crime, but nevertheless denied a new trial. In reviewing the evidence, however, the trial court had stated there was evidence of intent and therefore he would not set the verdict aside. The granting of a new trial lies very largely in the sound discretion of the trial judge and this court will not disturb this finding in the absence of clear abuse of discretion. The trial judge in this case is a jurist of sound judgment and wide experience in the trial of both criminal and civil matters, and there was clearly no abuse of any discretion upon his part.

Counsel for appellant have very ably presented the points upon which they rely for reversal, but the facts are so strong, and the conclusions that the jury have reached are so amply supported, and the trial was so fairly conducted that we can find no error justifying a reversal.

For the foregoing reasons, therefore, the judgment and order are affirmed.

Thompson, J., and Tuttle, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 9, 1940, and the following opinion then rendered thereon:

THE COURT.—Appellant, in his petition for a rehearing, suggests that this court in its recital of the facts has failed to indicate the conflict in the evidence. Upon appeal, as pointed out in *People* v. *Dukes*, 90 Cal. App. 657 [266 Pac. 558], all intendments favor upholding the judgment, and the evidence is to be viewed in the light most favorable to the prosecution, and the jury, having found appellant guilty, it must be assumed the jury believed such testimony as pointed toward his guilt.

In the case at bar the testimony of appellant was that he went to the home of his wife to shoot himself in her pres-

ence, and in his attempt to get the revolver from his pocket or on account of his poor aim, the gun was discharged, missed appellant, and the bullet passed over the head of his wife. This theory was disbelieved by the jury. It should be kept in mind, therefore, that our narrative of what took place was gathered from what the jury must have believed the facts to have been, and not the construction placed thereon by appellant.

Rehearing denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1940.