[Crim. No. 4260.   Second Dist., Div. Three.   Dec. 30, 1948.]

THE PEOPLE, Respondent, v. HARROLD FORD, Appellant.

468

Morris Lavine for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant was accused of grand theft and was convicted in a jury trial of taking a small purse and jewelry of the value of $1,750 from the home of a Mrs. Floyd. He appeals from the judgment and from an order denying his motion for new trial.

The points on appeal are that there was insufficient proof of the corpus delicti to allow the admission in evidence of defendant's confession, and that the court erred in giving erroneous and conflicting instructions. The record also discloses certain statements made to the jury by the prosecutor which require examination for the purpose of determining whether they constituted prejudicial misconduct.

Defendant was one of four men employed by a furniture moving company on October 1, 1947, to pack and move household furniture from the home of Mrs. Floyd. Defendant assisted in the work. Mrs. Floyd, testifying for the People, identified a small purse containing several articles of jewelry as her own. She testified that she had seen them in a dresser drawer in an upstairs bedroom of her home on the morning of October 1st; she looked for them the same evening and they were missing; the property had a value of $1,750; and she had not given permission to defendant or anyone else to take the articles. Police Officer Kitzman testified that he

first saw the articles in room 311, in the Y.M.C.A. building, on October 30, 1947. He also testified that later, on the same day, he had a conversation with defendant in the city jail; he and Officer Hoocker questioned defendant about the jewelry; defendant denied all knowledge of the theft or the jewelry; they then told defendant that Lynn McClary was in jail, having been arrested at the Y.M.C.A., and that they had recovered the purse and contents from a sleeve of a coat that was hanging in the closet; defendant then stated that he had taken the purse and contents from the home, put them in a van, later in some shrubbery, and during the same evening, in the company of Lynn McClary, had recovered them and taken them to the Y.M.C.A., where he had given them to McClary and asked him to hide them. Defendant admitted upon the stand that he had confessed to the theft. It was in evidence and undisputed that at the time of his interview with the officers defendant was suffering from serious injuries which he had recently received in an automobile accident. His jaws were broken, his teeth were wired together, his chest had been crushed and one of his legs was in a cast. In giving reasons for his confession, he testified that after he had asked the officers to be allowed to visit his doctor with whom he had an appointment on the day of his arrest, they told him he could not see his doctor, his wife or anyone else, until the matter was cleared up and he had admitted taking the property; he would be put in a cell and kept there with nothing to eat; and he might as well confess because nothing would be done to him, since the property had been recovered and the parties did not wish to prosecute. The officers denied having made these statements. Defendant denied on the stand that he had stolen the property or had any knowledge of the theft. He admitted an acquaintance with McClary, and testified that he had seen him frequently. The question of the voluntary nature of the confession was submitted to the jury under instructions which, except as hereinafter noted, were correct statements of the law.

We shall consider first the matter of the statements made by the deputy district attorney who was prosecuting the case, in his opening argument to the jury. The record reads as follows: (By Mr. Galliano) ''Mrs. Ford tells us that this jewelry was kept in a dresser drawer upstairs. Sometime while those men were working there, ladies and gentlemen, that jewelry disappeared. We next find the jewelry in the possession of Mr. —— or, it was found at the Y.M.C.A., and

Mr. McClary was convicted of that charge—Mrs Root: Wait a minute. The Court: Just a minute. There is no proof of that at all. Mr. Galliano: All right, I will withdraw that. At any rate—well, I won't argue with the Court, but I believe that was introduced. Nevertheless, ladies and gentlemen, Mr. Kitzman told us that he found at a room at the Y.M.C.A.—— Mrs. Root: No, just a minute. Mr. Kitzman didn't tell the jury that. That was only elicited in a conversation that allegedly Mr. Kitzman told Mr. Ford. . . . Mr. Galliano: At any rate, ladies and gentlemen, you have heard the evidence'' etc.

It will be noted that after the court had made the statement that there had been no proof of the conviction of McClary the prosecutor persisted, without the slightest justification appearing in the record, in disputing the correctness of the court's statement. It is incredible that the statements respecting McClary's conviction could have been made in good faith, or for any purpose other than to place before the jury a fact harmful to defendant that would not have been received as evidence. We would be accusing the deputy district attorney of crass ignorance or deplorable inexperience, or both, were we to assume that he did not know the wholly improper and inexcusable nature of his remarks. In making them, he was guilty of flagrant misconduct.

The remarks were not assigned as misconduct and the court was not requested to admonish the jury to disregard them. The question arises whether the misconduct may be considered as a ground for reversal. As a general rule, if the harmful effect of improper statements could probably have been removed by an admonition to the jury, failure to request such admonition is regarded as a waiver of the right to rely upon the statements as misconduct. (*People* v. *Simon*, 80 Cal.App. 675, 678-9 [252 P. 758], and many cases cited.) Upon the other hand, where the misconduct is of such a character that it cannot be purged of its harmful effect by an admonition, it will be considered as a possible ground for reversal in cases where the jury has been admonished (*People* v. *Braun*, 14 Cal.2d 1, 8 [92 P.2d 402] ; *People* v. *Derwae*, 155 Cal. 592, 597 [102 P. 266] ; *People* v. *Hidalgo*, 78 Cal. App.2d 926, 948-9 [179 P.2d 102] ; *People* v. *Duvernay*, 43 Cal.App.2d 823, 828 [111 P.2d 659] ; *People* v. *Edgar*, 34 Cal.App. 459, 471 [167 P. 891] ), as well as in cases where no objection was made or admonition requested on behalf of the accused (*People* v. *Wynn*, 44 Cal.App.2d 723, 732 [112 P.2d

979] ; *People* v. *Podwys,* 6 Cal.App.2d 71, 76 [44 P.2d 377] ; *People* v. *Stafford,* 108 Cal.App. 26, 29 [290 P. 920] ; *People* v. *Simon,* 80 Cal.App. 675, 679 [252 P. 758] ; *People* v. *George,* 72 Cal.App. 124, 131 [236 P. 934]). In either situation, where the case is closely balanced and guilt has not been so clearly established as to render it improbable that the harmful effect of the misconduct may have turned the scales against the accused, such misconduct has consistently been deemed ground for reversal. (*People* v. *Hale,* 82 Cal.App.2d 827, 834 [187 P.2d 121] ; see also, *People* v. *Lynch,* 60 Cal.App.2d 133, 145 [140 P.2d 418] ; *People* v. *Fleming,* 166 Cal. 357, 381 [136 P. 291, Ann.Cas. 1915B, 881] ; *People* v. *Angelopoulos,* 30 Cal.App.2d 538, 549 [86 P.2d 873].)

█ In the present case, as the evidence recited above clearly shows, there was only slight circumstantial evidence of defendant's guilt aside from the confession. There was no competent evidence that the jewelry had been found in McClary's room. That fact, if it be a fact, appeared only in a statement which Officer Kitzman testified he made to defendant. Otherwise, McClary was implicated only through defendant's confession, and there was ample evidence from which the jury could have found the confession to have been involuntary. Although the fact of McClary's conviction had not been established by the evidence, and had nowhere been previously alluded to during the trial, the jury could have believed from the prosecutor's statement and the court's remarks that it was a fact which would have been entitled to consideration had it been proved, and that failure to prove it was a mere oversight. The statement was obviously detrimental to the defendant in the extreme. With knowledge that McClary had been convicted of receiving stolen property which, according to the confession had been given him by defendant, there was scarcely a remote chance that the jury would have acquitted defendant. Under these circumstances, and in view of the meager state of the evidence aside from the confession, we are satisfied that the harm done was fatal to the defense and that an admonition to the jury would have been useless.

█ Although the briefs filed by the present counsel of appellant, who did not represent him at the trial, do not raise the question of misconduct, we cannot ignore it. The mere oversight of the attorney for an accused to present a serious claim of error which is justified by the record furnishes no excuse for the perpetuation by the reviewing court of an obvious injustice. Its duty to see that the substantial rights

of the accused are protected may not be thus circumscribed. Grave infractions of these rights by prosecutors are not to be condoned. It happens all too often that such infractions have taken place and that reviewing courts are confronted with the serious and difficult problem of deciding whether a miscarriage of justice has resulted. It is also of grave concern that unfair tactics are frequently found to have been indulged in by experienced practitioners.

It is an unpleasant duty to hold that a prosecutor has been intentionally guilty of prejudicial misconduct, but it is nevertheless a duty which the reviewing courts must not overlook or shirk. We may add that the trial courts have the same duty and are in a far better position to protect the rights of the accused than are the reviewing courts. When a prosecuting officer makes an improper statement to the jury, or is guilty of other unfair conduct, the trial court should not hesitate to remove any harmful effect of the misconduct by proper admonition to the jury, or if it does not clearly appear that an admonition will serve that purpose, to order a mistrial. It has always been necessary for the courts to exercise a restraining influence upon the conduct of over-zealous prosecutors. In this they never have been, and probably never will be, wholly successful. But of one thing we may be certain: it cannot be expected that misconduct, such as we are considering, will be discontinued or diminished as long as it goes unrebuked.

We have extended our remarks respecting misconduct in the hope that they will be taken as a serious effort to inspire a greater degree of responsibility, duty and caution on the part of those prosecutors who are either careless in the observance of the rights of the accused or wholly indifferent to the consequences of their misconduct. It is regrettable that so much is left for reviewing courts in the way of discouraging misconduct. Fewer judgments would have to be reversed if the trial courts were more firm in controlling the comparatively few prosecutors who need restraint.

It is unnecessary to pass upon appellant's claim that there was insufficient proof of the corpus delicti to warrant the receipt of evidence of defendant's confession.

■ One of the instructions explained what a confession is and continued as follows: "If under my instructions you find that a voluntary confession was made you are the exclusive judges as to whether or not the confession was true. In deciding this question you will consider all of the circum-

stances connected with the making of the statement shown by the evidence and *if you find that the confession was false either entirely or in part it remains nevertheless for your consideration, to be given such significance as your judgment may determine under instructions I shall shortly give you concerning false statements made by a person accused of a crime."* No instruction was given concerning false statements made by persons accused of crimes.

By this instruction the jury were told, in effect, that if they believed defendant lied to the officers when he confessed his guilt, the fact that he had lied tended in some manner and to some degree to prove his guilt. Just how or to what extent was not stated. The jurors were to determine that for themselves, and according to their individual opinions as to what was expected of them in obeying the instruction. We may not assume that they disregarded it altogether and yet we cannot see how they could have evolved any reasonable theory under which a false confession of guilt could be considered as an indication of guilt. If the jury had believed that defendant lied to the officers when he admitted the theft, he should have been acquitted. How they could have started with the premise that he was innocent and ended with a conclusion that he was guilty because he had lied to the officers is something we are unable to comprehend. But if this could not have been done the instruction was confusing and impossible of rational application to the evidence. It was error to give it.

For the foregoing reasons the judgment and order denying defendant's motion for new trial are reversed.

Wood, J., and Valleé, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 27, 1949.