[Crim. No. 6198. Second Dist., Div. One. Sept. 17, 1958.]

THE PEOPLE, Respondent, v. JOHN WILLIAM CARR et al., Appellants.

Ellery E. Cuff, Public Defender (Los Angeles), and J. Raymond Cullum, Deputy Public Defender, for Appellants.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendants were charged by information with a violation of section 211 of the Penal Code and convicted by a jury of first degree robbery. Their motions for new trial were denied and both were sentenced to the state prison. From the judgment of conviction and order denying motion for new trial both defendants appeal.

The defendants offered no evidence at the trial. The following facts are taken from the People's case. On October 8, 1957, at approximately 2 a.m. Robert W. McKenzie, while walking alone on the beach, was accosted and robbed by two men. Neither spoke to him. Although he saw no weapon on either man as he fell in the sand he was struck repeatedly about the head with a heavy object. He was rendered unconscious. When he came to he discovered 80 cents in change, his keys and his wallet containing a campfire permit, badge, identification card, credit cards, insurance card and driver's license were missing. He called police who searched the area and found nothing. McKenzie suffered two lacerations on the side of the head, multiple bruises and abrasions on the face, a cut lip, two broken teeth and a fractured rib.

On the same morning, one and one-half hours later, police stopped a slow-moving car owned by defendant Triandofilos in which he was riding and which defendant Carr was driving. The rear license plate was partially obscured by mud and dirt. Upon being asked to produce his driver's license Carr walked back to the trunk compartment, opened it with a key, and searched in a small bag wherein officers later found McKenzie's campfire permit (Exhibit 2) and his keys (Exhibit 3). Both defendants were arrested and when the car was searched police found two loaded guns, a p.38 and a .45 automatic pistol, only one of which was offered into evidence. Defendants claimed they had been burglary victims and that for their protection Triandofilos had purchased the guns in another state.

A week later in the Culver City police station McKenzie identified Carr from a 15-prisoner lineup as one of his assailants. He could not identify the second man and at no time has claimed defendant Triandofilos was the other involved.

Both defendants told police they had left New York together several weeks before and had been together since. Carr

explained they had been driving around waiting for morning so they could see a man about getting work. He claimed he had found McKenzie's campfire permit and keys in a service station restroom shortly before his arrest, had tossed them into his bag in the trunk of the car and told Triandofilos, who had been asleep in the car, nothing about them. Triandofilos, who told police he had never been in trouble before, denied knowing anything about the two items. Both defendants denied to the police they had robbed and beaten McKenzie.

At the trial McKenzie identified Carr as one of the men whom he "believed" had attacked him and upon further query by the prosecuting attorney as to whether it was his best recollection that defendant Carr was one of the two McKenzie responded, "Yes, it is." Asked on cross-examination what led him to believe Carr was the man he answered, "I saw him with the light behind him and he was silhouetted against the light. He was a man of stocky build and at the time he had light blond or light brown hair. . . ." McKenzie admitted he was unable to see their features and could give no further description of either man. Dr. Rayola who examined the victim's wounds testified that they were caused by an instrument similar to the .45 automatic pistol. Martin Klein, forensic chemist, examined the .45 automatic and found traces of blood on the rear portion of the "sleeve" of the weapon but because the quantity was so small could not determine its age or even whether it was human blood. No traces of hair were found on the weapon.

Defendants did not testify at the trial and no evidence was offered on their behalf.

Appellants contend first that the evidence was insufficient to sustain the conviction and, second, that the deputy district attorney was guilty of prejudicial misconduct.

The rule relating to an appeal court's review of the evidence is well stated in the case of *People* v. *Osslo,* 50 Cal.2d 75 [323 P.2d 397], and *People* v. *Daugherty,* 40 Cal.2d 876 [256 P.2d 911]. Unquestionably the evidence against defendants is largely circumstantial but it is with this principle of appellate review in mind that we examine the main circumstances relied upon by the prosecution to connect defendants with the perpetration of the robbery.

When arrested Carr had in his possession two items belonging to McKenzie, a campfire permit and some keys. This fact, appellants claim, without other suspicious or incriminatory circumstances is insufficient to sustain the con-

viction. Such evidence of course is admissible, tending to show the identity of the perpetrator of an offense, but mere possession of stolen property alone is not sufficient to sustain a conviction. It is only a circumstance tending to prove guilt. However we find in this record the "slight corroborative evidence of other inculpatory circumstances" necessary to sustain the conviction. (*People* v. *Wissenfeld*, 36 Cal.2d 758, 763 [227 P.2d 833]; *People* v. *Holland*, 82 Cal.App.2d 310, 312 [186 P.2d 58]; *People* v. *Leary*, 28 Cal.2d 727, 735 [172 P.2d 34].) We refer to the identification of Carr as one of the assailants and defendants' possession of the .45 automatic. The jury was not bound to, and did not, accept Carr's explanation about finding the stolen items even though it could have reasonably inferred that had he robbed McKenzie he probably would have kept the more valuable part of the loot— the driver's license and identification cards.

As to the identity of those who beat and robbed him McKenzie's description was vague. He described only one, as of stocky build with light hair. However a week later in a police lineup he identified Carr and again at the trial pointed to him as one who "I believe attacked me." On further examination he affirmed that to his best recollection Carr was one of the men.

It is true that McKenzie's opportunity to observe the two men was not only limited but under most difficult conditions and that other evidence in the record might well have convinced the jury that McKenzie's identification of Carr, under the circumstances, was not worthy of belief. However we might feel about the weakness of Carr's identification, the jury in evaluating and weighing the evidence had a right to, and did, accept McKenzie's testimony. The evidence that it was dark at the time of the robbery; that the victim had been drinking, was nearsighted and wore glasses which had been knocked off his face; that when he fell to the ground he put his hands over his head and at no time saw the features of the two men or heard their voices; and that McKenzie was under great fear and stress and received head blows severe enough to render him unconscious, only served to create a question of fact for the jury. The resolution of the conflicting evidence is for the trier of fact. (*People* v. *Huizenga*, 34 Cal. 2d 669 [213 P.2d 710]; *People* v. *Ross*, 120 Cal.App.2d 882 [262 P.2d 343]; *People* v. *Osslo*, 50 Cal.2d 75 [323 P.2d 397]; *People* v. *Daugherty*, 40 Cal.2d 876 [256 P.2d 911].)

Much the same may be said concerning the inference that

the .45 automatic could have been the assault weapon., Appellants contend such an inference was unreasonable.

Possession of the gun by defendants, one of whom was identified by the victim and who had in his possession some of the victim's property, reasonably supports the inference that it was utilized in causing the injuries described by the victim as having been inflicted "with some heavy object," and by Dr. Rayola as possibly having been caused "by a very hardy instrument" and "by such kind of instrument." (.45 automatic.)

As for defendant Triandofilos no one identified him or described him as being involved in the robbery. Although two items of stolen property were found in his automobile they were in the immediate possession of Carr who claimed he found them. Triandofilos not only denied any knowledge of the stolen items but denied to police any participation in the crime. Any inference that Triandofilos participated in the robbery must rest on the presence of some of the stolen property in his automobile, his purchase and possession of the .45 automatic and upon his close association with Carr who was identified as one of the assailants. ██ Of some importance in considering the sufficiency of the evidence is the failure of both defendants to testify at the trial, which the jury could consider with the other evidence. (*People* v. *Ashley*, 42 Cal.2d 246 [267 P.2d 271]; *People* v. *Adamson*, 27 Cal.2d 478 [165 P.2d 3]; *People* v. *Chapman*, 156 Cal.App. 2d 151 [319 P.2d 8].)

Circumstantial as the People's case may be, in assuming the existence of every fact which the jury could have reasonably deduced from the evidence we conclude that it was legally sufficient to support the verdict against both defendants and appellate interference with the determination of the jury is not justified.

██ Of greater significance however is appellants' claim that the misconduct of the deputy district attorney was so prejudicial as to have precluded them from having a fair trial. It is because of this contention we have set out in detail the close questions of fact presented to the jury relating particularly to the identity of Carr and the participation of Triandofilos who was convicted mainly "by association." The following specifications of misconduct of the prosecuting attorney present a substantial basis for attacking the verdict.

In his opening statement the deputy district attorney, referring to the arrest of defendants, told the jury "Upon

further search of the car, the officers found Mr. McKenzie's personal effects that had been in his wallet, photograph identification, a camp fire permit issued to him; *all* of his identification as to where he worked, and *all* that had been in his wallet were in the trunk of the car; his keys . . .'' (Emphasis added.) The record discloses that out of the change, keys, wallet, campfire permit, badge, employment identification card, credit cards, insurance card and driver's license taken from the victim, only the keys and the campfire permit were found in defendants' car. Although apparently most of the victim's property was recovered, the record is silent as to when, where and by whom. That such overstatement of what the evidence would show was prejudicial to defendants is clear from the reasonable inferences the jury might well have taken from it. Considering the state of the evidence and particularly the fact that although two loaded guns were found in defendants' car only one was produced and offered in evidence by the prosecuting attorney, the jury could have fairly concluded that all of the victim's property was found in the car; but only two items were produced and placed in evidence. Those not offered in evidence, the credit cards, identification cards, badge and driver's license are all items of particular value to one bent on larceny. It was an entirely reasonable inference that defendants actually had these items and intended to use them in what the deputy district attorney later told the jury they were doing that night—''working at their trade and looking for somebody to rob.'' Taking into consideration defendants' outright denials to police that they were in any way involved in the robbery, Carr's not unreasonable explanation as to how he came by the two stolen items, the circumstances surrounding the identification of Carr, and that the campfire permit and keys were the only part of the stolen items found in the car, the jury otherwise could well have believed that the defendants did not rob McKenzie because had they done so they most likely would have kept the most valuable portion of the loot which could no more incriminate them than the permit bearing the victim's name and would have better served for false identification.

It is well settled that the opening statement of the deputy district attorney will furnish ground for an assignment of prejudicial misconduct only in exceptional cases— some involve lack of good faith or a deliberate attempt to misstate the evidence (*People* v. *Lucas,* 160 Cal.App.2d 305 [324 P.2d 933]; *People* v. *Alexander,* 41 Cal.App.2d 275

[106 P.2d 450, 916]; *People* v. *Berryman,* 6 Cal.2d 331 [57 P.2d 136]; *People* v. *Emme,* 120 Cal.App. 9 [7 P.2d 183]), and some disclose such flagrantly improper conduct as to work a legal prejudice to the defendant. (*People* v. *Arnold,* 199 Cal. 471 [250 P. 168].) The purpose of the opening statement of the prosecuting attorney is to outline the state's evidence against the one accused of crime and to inform the jury what the People intend to prove. Generally the failure to make such proof during the trial does not indicate prejudice, particularly in the absence of showing of bad faith. However it is the substance and implication of a statement or the effect of an act which really define what the law recognizes as prejudicial misconduct. (*People* v. *Planagan,* 65 Cal.App.2d 371 [150 P.2d 927].) Whereas in the case at bar the unwarranted statement might not alone have prejudiced the defendants, the cumulative effect on the jury of this and other unjustified comments of the deputy district attorney justifies a contrary conclusion particularly in view of the state of the evidence.

As to the prosecuting attorney's good faith in including *all* of the stolen property, in view of the importance of the circumstance of possession of some of it, and that without it he in all probability could not have made a case against defendants, the deputy district attorney must have known in advance that his witnesses, Officers Bennett, Good and Perkins, would testify that only the two items were found in defendants' car. Of interest in this connection is the case of *People* v. *Bentley,* 131 Cal.App.2d 687, in which the court stated at page 690 [281 P.2d 1]: "The district attorney knew, or should have known, the testimony the officer was going to give . . . Every prosecutor who offers a witness to testify to conversations with an accused should know what the witness will relate if given a free hand." Although appellant does not contend that the deputy district attorney was guilty of a deliberate misrepresentation of the evidence it is obvious in view of the weaknesses of the People's case that the prosecutor was willing to, and did, take advantage of every opportunity to influence the jury against defendants whether it was created by carelessness or deliberation on his part. To say that the deputy district attorney's comment to the jury at the outset of his opening statement that what he was about to tell them was not evidence but only what he intended to prove; and the court's instruction to the jury that any statement of counsel concerning the facts must not be regarded as

evidence, cured the effect of overstatements and misstatements of the evidence by the prosecuting attorney, is to completely ignore their practical and lasting effect on a jury, and the inability of laymen to completely reject and erase from their minds damaging statements they have heard.

This is not the only comment made by the deputy district attorney in his opening statement and later unsupported by the evidence. He continued, "In the course of this conversation, Mr. Triandofilos asked the police officers in Long Beach if there was any chance to reduce this charge and permit them to plead to something less than robbery upon which they were booked." Defendants' motions for mistrial were denied. At the close of the People's case the prosecuting attorney, out of the hearing of the jury, offered to prove that "The two defendants were together at the jail elevator. Mr. Triandofilos said to Mr. Lambert and Mr. Ragsdale, 'If we plead guilty can we get any lesser sentence?'" The trial court's ruling is not clear, but it did not permit the statement to be received in evidence.

It is true that an offer on the part of a defendant to plead guilty to the offense charged, or to a lesser offense, is admissible against him as constituting an implied admission of guilt. However there is here only the query, "If we plead guilty can we get any lesser sentence?" We fail to see wherein there is an offer to plead. It is at most an inquiry about what defendants could expect if they decided to enter a plea. The prosecuting attorney's offer of proof fails to come up to the "offer to plead" admissible against a defendant and the trial court's refusal to permit the evidence to go before the jury was undoubtedly proper. The deputy district attorney exceeded permissible bounds in informing the jury that Mr. Triandofilos had asked police officers if they would permit them to plead guilty to a lesser offense. His assertion to the jury finds no support either in the evidence or his offer of proof.

During his closing argument the deputy district attorney told the jury ". . . these men were driving very slowly down Washington Boulevard in a westerly direction with a gun on the floor under each one of them, and I say they were out working at their trade and looking for somebody to rob," to which objection was made and overruled.

The prosecuting attorney may place any fair interpretation upon the facts and may make any reasonable inference fairly drawn from the evidence. (*People* v. *Eggers*, 30 Cal.2d 676

[185 P.2d 1].) However, in view of the lack of any evidence to support prior arrests, suspected participation in other robberies or any kind of trouble with the law and their denials to police that they were in any way involved in the McKenzie robbery, the deputy district attorney's use of the phrase "working at their trade" was entirely unwarranted. The word "trade" connotes an occupation or regular means of livelihood and is defined in Webster's New International Dictionary, second edition (unabridged) at page 2683: "The business one practices or the work in which one engages regularly; one's calling; occupation; gainful employment; means of livelihood." Likewise the prosecuting attorney's use of the phrase, "I say" might well have led the jury to conclude he personally had information that defendants had previously engaged in robbery, made their living robbing people and were professionals. It is almost too well settled for citation of authority that "statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct." (*People* v. *Kirkes*, 39 Cal.2d 719, 724 [249 P.2d 1].) Several cases of interest here are *People* v. *Shaffer*, 150 Cal.App.2d 287 [309 P.2d 475], in which the court held the deputy district attorney's implication that defendant was in the business of selling narcotics was prejudicial misconduct because there was no evidence to justify it; and *People* v. *Vienne*, 142 Cal.App.2d 172 [297 P.2d 1027], in which the prosecuting attorney told the jury, "Now if you want to put these professional gunmen away, you and other juries like you are going to have to do it." Said the court at page 174: "There was no evidence which would indicate that the defendant in this case was a professional gunman, and the remark of the deputy was unwarranted."

While it is easy to understand counsel becoming excited in the course of the trial and while it is natural and necessary that counsel for the People as well as counsel for the defendant shall have the mind of an advocate, still the district attorney as a representative of the People is bound to refrain from making inflammatory statements and is bound by a somewhat higher duty of fairness than is the ordinary practitioner in a court of law. (*People* v. *Wilkes*, 44 Cal.2d 679 [284 P.2d 481].)

The determination of whether misconduct of the prosecuting attorney has prejudiced substantial rights of a defendant rests largely upon the circumstances of each case and

an appellate court may, and indeed it is its duty, to reverse a conviction when it is apparent from all the facts that there has been a miscarriage of justice. (*People* v. *Kirkes*, 39 Cal.2d 719 [249 P.2d 1].) Strength of the proof of guilt is an important factor to consider in determining whether misconduct has prejudiced a defendant (*People* v. *Byrnes*, 84 Cal.App.2d 64 [190 P.2d 286]; *People* v. *Lucas*, 160 Cal.App. 2d 305 [324 P.2d 933]), and where the case is so closely balanced and guilt has not been so strongly established as to render it improbable that the harmful effect of the misconduct may have turned the scales against the accused, such misconduct has consistently been deemed ground for reversal. (*People* v. *Shaffer*, 150 Cal.App.2d 287, at page 296 [309 P.2d 475]; *People* v. *Ford*, 89 Cal.App.2d 467 [200 P.2d 867]; *People* v. *Beal*, 116 Cal.App.2d 475 [254 P.2d 100].) A prosecutor is limited to fair comment in his argument to a jury and when such limitation is exceeded in a close case, the comments may be prejudicial. (*People* v. *Johnson*, 153 Cal. App.2d 564 [314 P.2d 751].) The evidence at bar is not so strong in its support of the verdict that it does not appear reasonable to believe that the misconduct of the deputy district attorney contributed materially to the jury's determination of guilt. This was a close case on facts. The remarks of the prosecuting attorney in his opening statement, coupled with his comment on the evidence in his closing argument, viewed in their entirety and cumulative effect in relation to the state of the evidence, convince us that the misconduct of the deputy district attorney was so prejudicial as to result in depriving defendants of a fair trial.

Judgment and order denying motion for a new trial are and each is reversed as to each defendant and the cause remanded for a new trial.

White, P. J., concurred.

FOURT, J., Dissenting.—The appellants have made two main contentions: first, that the evidence was insufficient to sustain the convictions, and secondly, that the district attorney was guilty of misconduct.

The statement of facts as set forth in the majority opinion, while sufficient, does not include many matters which are important. However, I will not extend the factual statement further for the reason that the majority has correctly ruled

and come to the conclusion that there was, in any event, sufficient evidence to find the appellants guilty.

Considering the claimed misconduct of the district attorney in his opening statement. There seemingly is no claim or contention that there was any bad faith upon the part of the deputy district attorney in this connection. In fact, at the time of the argument on the motion for a new trial, which was made upon the grounds of the misconduct of the district attorney, counsel for the defendants said: "In making this remark, I refer in no way or mean to suggest that the District Attorney was acting in any way in bad faith," and again in the same argument counsel stated, "Again, I want to make it perfectly clear to the Court, the District Attorney, and the record, that I am not attempting to imply that he was acting in bad faith."

The deputy district attorney told the jury, at the very start of his opening statement, the following:

". . . Ladies and Gentlemen of the jury: Most of you have had experience in criminal cases, so it may be redundant to say this to you. What I may say by way of an opening statement is not evidence in the case. The evidence must come from the lips of the witnesses or physical objects which are introduced in evidence, and not from the statements of either one of the lawyers.

"If you will keep that in mind, I will attempt to trace briefly and cronologically the events as we expect and intend to prove them."

Likewise, the court instructed the jury to the following effect: "As to any statement made by counsel in your presence concerning the facts in the case, you must not regard such a statement as evidence; . . ."

The first statement made by the deputy district attorney which is questioned is as follows:

"Upon further search of the car, the officers found Mr. McKenzie's personal effects that had been in his wallet, photograph identification, a camp fire permit issued to him; all of his identification as to where he worked, and all that had been in his wallet were in the trunk of the car; his keys, and then the officers communicated with the various other authorities, including the Long Beach Police Department, and later the two defendants were taken from the Culver City custody and brought to Long Beach."

The testimony disclosed that the keys, the nail clip and the campfire permit were found with the defendants. The camp-

fire permit cited upon its face the name of the victim and his home address. The Long Beach police had, after the original investigation, picked up some other items which had been in the possession of the victim, some of which, namely, an "I.D. card and driver's license," had been seen by the victim in the possession of the inspector of the police department, but the victim did not "know what is all in there."

There is no showing whatsoever in this case, nor can there be any, that the statement that "all" of the property of McKenzie was found in the possession of the defendants was made in bad faith, or with the view of distorting the People's case. In *People* v. *Lucas,* 160 Cal.App.2d 305 at pages 308-309 [324 P.2d 933], it was said: "The opening statement did say that 'the pictures will show' that the final shot was fired into decedent's head while he lay on the floor. In fact this was not established, but was disproved by evidence produced by defendant. However, there is no showing that the erroneous statement by the prosecutor was made in bad faith. In the absence of a positive showing of a deliberate attempt to misstate the case, such a remark cannot constitute prejudicial misconduct. (*People* v. *Alexander,* 41 Cal.App. 2d 275, 282 [106 P.2d 450, 916].) Appellate courts recognize that such an overstatement reacts against the party making it, and thus often is not prejudicial to the opposing party. (*People* v. *Berryman,* 6 Cal.2d 331, 336 [57 P.2d 136], and cases there cited.) In the case at bar, defense counsel made effective use of the overstatement in his argument, quoting the opening statement and pointing out to the jury the respects in which the proof fell short of sustaining its assertions." Also see *People* v. *Alexander,* 41 Cal.App.2d 275, at pages 282-283 [106 P.2d 450, 916], where it is said:

"In the absence of a positive showing of a deliberate attempt to misstate the case, such remark cannot constitute prejudicial misconduct. (Citing cases.) Also no objection was made to this remark nor was the alleged misconduct called to the attention of the court or jury at the close of the prosecution's case. We cannot assume that a public official deliberately injected false accusations in his opening statement. In the absence of any showing we must assume it was that officer's honest belief that he would introduce such evidence. It may have been that the witnesses were not available or that owing to the development of the trial such evidence might by him have been deemed unnecessary and immaterial."

In my opinion the statement complained of had no effect whatsoever upon the final outcome of the case.

The next statement made by the deputy district attorney and complained of by the appellants is as follows:

"In the course of this conversation, Mr. Triandofilos asked the police officers in Long Beach if there was any chance to reduce this charge and permit them to plead to something less than robbery upon which they were booked. Mr. McKenzie will identify, not completely, Mr. Carr, and will not be able to identify Mr. Triandofilos."

At the conclusion of the testimony of a police inspector (cross-examination by appellants' counsel), the following occurred:

"Mr. Cullum (Deputy Public Defender): Nothing further. Might we have our recess at this time and we will discuss a legal matter with the Court?

"(The following proceedings had at the bench out of the hearing of the jury:)

"The Court: My inclination would be not to admit testimony of the defendant offering to plead guilty to a lesser offense. I can think of many reasons why a defendant would.

"Mr. Cochran (Deputy District Attorney): Let me refresh the recollection of the Court to the proposed testimony: The two defendants were together at the jail elevator. Mr. Triandofilos said to Mr. Lambert and Ragsdale, 'If we plead guilty can we get any lesser sentence?' That is a little different than the Court's contention. If there is any question about the importance of it I am sure there are cases in Fricke which the Court may have read, but are not in your mind.

"The Court: They are not in my mind. If you will obtain them and we will discuss them after the recess outside of the presence of the jury.

"(In open court.)

"Mr. Cullum: Before we commence, may counsel approach the bench?

"The Court: Yes.

"(Discussion at the bench.)

"Mr. Cochran: People rest.

"Mr. Cullum: The defense rests.

"The Court: Proceed with the argument."

It is obvious to me that the judge indicated to the deputy district attorney that he would not permit the receipt of evidence of any conversation to the effect that defendant

Triandofilos had asked the officers if there was any chance to reduce the charge and permit them to plead to some lesser offense.

In my opinion, if there was evidence which could have been presented to demonstrate that the defendant Triandofilos did ask the officers, in effect, if they could plead guilty to a lesser charge, such was admissible. It was appropriately stated in *People* v. *Cooper*, 81 Cal.App.2d 110, at pages 117-118 [183 P.2d 67]:

"Other material evidence was the implied admission of guilt of the charges herein when he offered to plead guilty to petty theft. In *People* v. *Carroll*, 92 Cal. 568 [28 P. 600], an officer testified that the defendants, who were arrested upon a charge of robbery, asked him if he would allow them to plead guilty to petty theft. On appeal therein it was contended that the conversation with the officer was not admissible, upon the ground that the defendants were not acting voluntarily. The court held therein that the conversation was voluntary and was properly admitted. In *People* v. *Boyd*, 67 Cal.App. 292 [227 P. 783], the defendant was charged with grand theft and obtaining money under false pretenses. When that case was called for trial, after several continuances had been had, defendant therein offered to plead guilty to obtaining money under false pretenses if the case would be continued to another date. That case was tried, and evidence therein as to the offer to so plead was received over the objection of the defendant, and defendant was convicted of obtaining money under false pretenses. On appeal therein the District Court of Appeal held that such objection should have been sustained, but the Supreme Court in denying a petition for a hearing disapproved that part of the opinion and held that the trial court was right in overruling the objection and receiving the evidence as to the offer to plead guilty to one of the offenses charged. The Supreme Court said therein at pages 302 and 303: 'The action of the defendant in that regard was an admission on his part of the truth of the charge that he obtained money under false pretenses, which, with the other evidence, was properly left to the consideration of the jury. . . . Such admission was not, of course, conclusive evidence against the defendant. It was competent evidence merely, its weight and sufficiency being proper subjects for consideration by the jury. . . . The defendant's own admission, voluntarily made, was clearly competent evidence against him.' "

From the colloquy at the bench and out of the presence and

hearing of the jury, it may be gathered that apparently Triandofilos did not, in fact, ask if a lesser charge could be filed, but rather asked in effect, "if we plead guilty can we get any lesser sentence?" Depending upon the circumstances under which the statement was made, it may or may not have been an admission. In any event, we are not concerned about that particular matter here because the testimony was never presented to the jury, and from the record before us, such presentation was not because of any bad faith upon the part of the prosecutor, but rather because of an indication of the court that the testimony would not be admitted in any event. There is not the slightest showing by the appellants that the statement made by the deputy district attorney had any adverse effect whatsoever as to their status.

Now turning to the statements made by the deputy district attorney in the final argument. The statement in question is as follows:

"Another thing that Mr. Cullum did not mention was the fact that these men were driving very slowly down Washington Boulevard in a westerly direction with a gun on the floor under each one of them, and I say they were out working at their trade and looking for somebody to rob.

"Mr. Cullum: I feel there is no evidence to support this statement of Mr. Cochran's. Objected to as an improper statement.

"The Court: I took it as an inference that the District Attorney was drawing. There is no evidence except what we have heard in the courtroom except that there was their trade. It is up to the jury to draw whatever inference they wish.

"Mr. Cochran: I am presenting an inference they may draw. They were not very affluent. Here was a piece of hose, an old coffee can, a rough funnel, what were those there for: The rubber hose smelled of gasoline.

"Mr. Cullum: I apologize to Mr. Cochran for the purpose of interrupting his argument: The purpose of closing argument is to answer points in the argument raised by me and he is going into points not gone into by me or in his opening argument.

"Mr Cochran: I am answering Mr. Cullum on the reasonableness.

"The Court: The objection is overruled.

"The Cochran: Those are things you have a right to take into consideration. They have not been of any assistance to this jury by taking the stand and explaining any of the cir-

cumstances placed against them if they did not have some very compelling reason that kept them off of the witness stand, you are deprived of having an opportunity to see either of them under oath on the witness stand or to see them cross-examined."

The majority opinion indicates that ". . . in view of the lack of any evidence to support prior arrests, suspected participation in other robberies, or any kind of trouble with the law, and their denials to police that they were in any way involved in the McKenzie robbery," the statement was unwarranted. I am not aware of any rule to the effect that the prosecution must show prior arrests or suspected participation and other robberies, or some other conflict with the law, before the district attorney can draw a proper inference in an argument before a jury. I am at a further loss to understand how the prosecution could have introduced evidence of prior arrests under the circumstances of this case, unless the defendants took the witness stand and testified in their own behalf, and that they refused to do.

In this particular case there is nothing in the record which would indicate that the defendants were timid and shy and therefore thought that they might not be good witnesses in their own behalf. In my view, if they were wholly innocent they had every good reason to take the witness stand and to tell the jury just what the facts of the matter were and what they had been doing. From what was said by their own counsel, I am inclined to the belief that each of them had some previous record and they did not care to testify, and then be impeached by a showing which could have been made. In this connection, their own attorney apparently advised them not to testify, and apparently so stated to the jury. He said at the conclusion of the trial, "There may be some doubt as to the eligibility of one of these defendants, some doubt of his eligibility for probation." Both defendants, in fact, asked the court to impose sentence at once, without any application for probation or pre-sentence report. At the time of sentence counsel for the defendants said: "In my opinion, the defendant Triandofilos is not eligible for probation," and "In review of the facts in this case, and my knowledge of the previous record of the defendant Carr, would lead me to believe that the Court probably would not grant probation in the case. . . ." Later on, in the same proceeding the court questioned the defendants as to their desire to be sentenced forthwith, and Triandofilos himself stated that he was ineligible for proba-

tion, and Carr stated in effect that because of his background he wanted to be sentenced then and there. As I view it, the defendants preferred not to explain to the judge how and why they happened to be along the streets, driving an automobile in the early morning hours with a license number substantially covered to the end that it could not be read, and with two fully loaded automatic pistols immediately at hand; nor did they care to explain how the blood got onto the slide of the .45 automatic which was in their immediate possession; nor did they care to explain to the jury how they happened into the possession of certain items which had been forcibly taken from the possession of the victim.

The prosecution has a wide field of discretion in a closing argument. As stated in *People* v. *Eggers,* 30 Cal.2d 676, at page 693 [185 P.2d 1] : " 'It is the province of a district attorney to state to a jury the various conclusions that he draws from the evidence, and to make it clear to the jury what conclusions in his opinion should be drawn from the evidence introduced, so long as he keeps within the scope of conclusions which may properly be drawn.' (*People* v. *Mc-Kenzie,* 12 Cal.App.2d 614, 615-616 [55 P.2d 1200].) 'The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury.' (*People* v. *Sieber,* 201 Cal. 341, 355-356 [257 P. 64].) In the argument before the jury, any reasonable inference may be drawn from the evidence, and it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion. (*People* v. *Hoyt,* 20 Cal.2d 306, 318 [125 P.2d 29].) Assuming that, giving effect to these rules, counsel 'illogically deduced' that a finding of torture could be inferred from the evidence, at least in the absence of objection, it does not amount to misconduct which has prejudiced defendant's rights."

I have read the entire opening statement, the opening argument and the closing argument, and in my view there was nothing said which was prejudicial error, nor which brought about a miscarriage of justice. There was evidence from which the judge and jury believed that the defendants had robbed McKenzie, and that they were later found roaming

the streets in an automobile, the rear license number of which was obscured, and that the defendants were armed with loaded guns in their immediate possession (one of which had blood upon it) ; that the defendants were unemployed and had no stationary place of abode, and had very little money in their immediate possession. I am of the opinion that for the district attorney to state what he did state, and to infer that the defendants were plying their trade, was not prejudicial error. The defendants never explained to the jury what their business or occupation was, and by their course of conduct any proper inference could be drawn and argued to the jury. Robbery, in my opinion, was not an unreasonable inference under the circumstances.

Lastly, the appellants complain of the prosecutor referring to their poverty, or that they had a small amount of money. The appellants themselves have answered that contention by admitting that they made no objection to the introduction of such evidence as to what property they had in their possession, and further that they made no objection to the comment upon their financial standing by the deputy district attorney. Such an objection cannot be made for the first time upon appeal. (*People* v. *Lindsey,* 90 Cal.App.2d 558, 567 [203 P.2d 572] ; *People* v. *Sellas,* 114 Cal.App. 367, 378 [300 P. 150] ; *People* v. *Agajanian,* 97 Cal.App.2d 399, 405 [218 P.2d 114].) However, in my opinion, if there had been an objection, it would not have been well taken and should have been overruled.

As I view it, the appellants in this case were properly convicted of robbery. The evidence was ample and sufficient. There was no error. However, assuming that there was error, it was not prejudicial nor sufficient to warrant a reversal. I would affirm the judgment.

A petition for a rehearing was denied October 14, 1958. Fourt, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied November 13, 1958. Shenk, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.