[Crim. No. 5716. Second Dist., Div. Three. Apr. 18, 1957.]

THE PEOPLE, Respondent, v. MILTON SHAFFER, Appellant.

A. Brigham Rose for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—By indictment defendant was accused of violating section 11500 of the Health and Safety Code in that he unlawfully sold heroin. An amendment to the indictment alleged that defendant had been previously convicted (1) of illegally concealing and purchasing narcotics (federal offense), a felony; and (2) violating section 11500 of the Health and Safety Code, a misdemeanor. Defendant admitted the allegations as to prior convictions. In a trial by jury he was convicted. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was insufficient to support the conviction; and that the deputy district attorney was guilty of misconduct.

Deputy Sheriff Velasquez testified that on February 27, 1956, while he was in the narcotic detail office of the sheriff, a man by the name of Tucker was brought into the office by an officer from the Whittier Police Department; that was the first time he (witness) had seen Tucker; then, in the presence of the witness (Velasquez), Tucker called telephone number Madison 5-2938. Deputy Velasquez also testified that he (Velasquez) dialed the number; by the use of earphones, which were in the office, a person could listen to the telephone conversation; Deputy Sheriff Kehoe monitored the telephone conversation.

Deputy Sheriff Kehoe testified that on February 27, 1956, about 8 p. m., one Tucker, who was accompanied by two police officers from Whittier, came into the narcotic detail office of the sheriff; then telephone number Madison 5-2938 was called; he (Kehoe) monitored that call by use of an earphone extension; he heard a telephone conversation between Tucker and another person; in the opinion of the witness (Kehoe), the voice he heard on the other end of the conversation was defendant Shaffer's voice; in that conversation the voice at the other end of the line said, "Hello"; Tucker said, "Milt? Bill. I would like to pick up six drop cords." The other voice said, "OK, come by in front of the house."

Deputy Velasquez testified further that after the telephone conversation he and Tucker went in a Studebaker automobile, which Tucker was driving, to 210 North Belmont Street in Los Angeles and stopped six or eight feet "past" that location—facing north, on the east side of Belmont; they arrived there about 8:50 p. m., and defendant was standing in front of the location; at that time Deputy Kehoe, Police Officer Gutierrez of the Los Angeles Police Department, and a police officer from Whittier were in a red automobile (referred to as an undercover automobile) on Belmont Street about half a block from the location—facing south, on the west side of Belmont; other automobiles were parked near 210 North Belmont; when Tucker stopped the Studebaker, defendant went to the driver's side of the automobile and, upon seeing Velasquez, said to Tucker: "Who is this [that]? I told you never to bring anyone around here"; Tucker said that Velasquez was all right, that Velasquez had been out hustling with

him and they had done time together, and there was no heat behind Velasquez; defendant moved away from the driver's side of the automobile and went around the rear of the automobile to the sidewalk at a place about 6 feet from the rear fender of the automobile; when Tucker went to the rear of the Studebaker, Velasquez remained in the front seat (on the right side) of the Studebaker, but he opened the door and put his feet outside; before leaving the sheriff's office, Velasquez gave Tucker a $10 bill, and Tucker put it in his jacket pocket; while Tucker and defendant were at said place on the sidewalk, Velasquez heard part of their conversation; he heard defendant say, ''I told you never to bring anyone around here, that I am just dealing with you''; Tucker returned to Velasquez and said, ''How much will we pick up?'' Velasquez said, ''Here's five,'' and then handed a $5.00 bill to Tucker; then Tucker returned to defendant but Velasquez could not hear their conversation; Velasquez saw Tucker hold the $5.00 bill in his right hand and ''he exchanged something, and he got something in return''; Velasquez did not see Tucker hand the $5.00 bill to anyone, and he did not see the $10 bill after he gave it to Tucker (at the sheriff's office); Tucker returned to the automobile and handed a ''little package wrapped in a partial balloon'' to Velasquez; then he and Tucker left the location and returned to the sheriff's office, where Velasquez examined the package and found that it contained six capsules and piece of a balloon; he placed those things in an envelope and delivered the envelope and contents to the sheriff's crime laboratory; defendant was arrested by Deputy Velasquez about a month or two thereafter, on Sunday about 6 a. m.

On redirect examination, Deputy Velasquez testified that he and Deputy Kehoe searched Tucker at the sheriff's office, prior to going to defendant's home at 210 North Belmont, and Tucker did not have any capsules on him at that time; they searched Tucker again after they returned to the sheriff's office, and they did not find anything.

The capsules contained heroin.

Deputy Kehoe testified further that Tucker and his automobile were searched prior to the time Tucker and Deputy Velasquez went to Belmont Street; Tucker was in the driver's seat, and Velasquez was in the passenger's seat, when they drove away from the sheriff's office; then Deputy Kehoe, accompanied by Officer Gutierrez and other officers, went in a red station wagon to Belmont Street; as Deputy Kehoe drove north on Belmont, passing 210 North Belmont, he saw defend-

ant standing on the sidewalk in front of that address; Deputy Kehoe made a "U-turn" on Belmont; Officer Gutierrez got out of the automobile (about a block and a half north of defendant's house) and started to walk south on the west side of Belmont; Kehoe parked his automobile on Belmont about 500 feet from 210 North Belmont and then saw a Studebaker pull up in front of 210 North Belmont; he saw defendant walk to the passenger's side of the Studebaker, hesitate there, go around the car to the driver's side, stand there a few moments, then return to the sidewalk near the rear fender of the car; the driver of the car went to the place on the sidewalk where defendant was standing; they stood there "a matter of minutes"; the driver returned to the car, then returned to defendant, then returned to the passenger's side of the car; thereafter the driver entered the car and drove north on Belmont and passed Kehoe; then Kehoe drove south on Belmont, picked up Officer Gutierrez, and returned to the sheriff's office.

Officer Gutierrez testified that on said February 27 he was in a station wagon which was driven by Deputy Kehoe north on Belmont Street to a place about a block and a half north of 210 North Belmont; at that place he (witness) alighted from the car and walked south, on the west side of the street, to a place across the street from 210 North Belmont; he saw defendant standing in front of that address; he saw Deputy Velasquez in the passenger's seat of the Studebaker, and he saw the other person (who was with Velasquez) get in the car and drive away; he (witness) continued to walk south after he passed defendant's house.

Defendant testified that he is in the business of selling electric skillets, cook ware, trouble lights, and drop cords; he operates the business under the name of National Wholesale Company, and he uses a station wagon in making sales trips in various states; George Bennett, who is associated with him in the business, is a half-brother of Tucker, referred to herein; Exhibit C (a drop cord) is a drop cord of the type that defendant sells; on February 27 he had two or three cartons of drop cords in his house; he owns a Studebaker coupé; on February 27 he ascertained that Tucker had taken the Studebaker without defendant's permission; on said date, about 7:30 p. m., Tucker telephoned him and said that he had some canned hams and asked if defendant wanted some of them; defendant said that he did not want them; Tucker also said he had sold drill sets and the few drop cords that

he had, and he would like to pick up some more drill sets and drop cords; defendant told him that he (defendant) wanted the car and that Tucker did not have permission to drive it; Tucker said that he would be right out; defendant replied that he would be out in front waiting for him; Tucker came out and parked the Studebaker in front of 218 North Belmont, which was the only available place for parking; Tucker got out of the car and approached the defendant, who was walking toward the driver's side of the car; defendant did not receive anything from, or hand anything to, Tucker on said February 27; defendant did not see Velasquez that night; the first time defendant saw him was on the 25th (March) about 6 a. m. when defendant was arrested; at the time of the arrest, Velasquez and another officer searched defendant's house; there were two cartons of drop cords in the house at that time.

On cross-examination, defendant testified that he had been convicted of a felony,—illegally concealing and purchasing narcotics in violation of the Jones-Miller Act; on February 27, when Tucker arrived in the Studebaker, defendant said that he wanted his automobile; Tucker said that he had an officer with him, that he (Tucker) had had some trouble but he thought he could work it out, and if defendant would let him take the car he would return it that evening; Tucker was there about three minutes; he drove the car away; defendant noticed that someone was in the car with Tucker; defendant's telephone number was Madison 5-2938, and it was not listed.

Mr. Campion, a witness on behalf of defendant, testified that he (witness) was a wholesale jobber of electrical appliances; that during the past two years defendant had purchased cook ware, drop cords, and tools from him; that once or twice a week defendant purchased drop cords, and during the two years had purchased between 500 and 750 cords.

Appellant's first contention, regarding insufficiency of the evidence, is not sustainable. The evidence was legally sufficient to support the verdict.

Appellant's second contention is, as above indicated, that the deputy district attorney was guilty of misconduct in his argument to the jury, and in asking certain questions. The evidence presented a close question of fact. No witness said that he saw Tucker hand money to appellant, and no witness said he saw appellant deliver heroin to Tucker. Tucker, who allegedly made the purchase, was not called as a witness. Deputy Velasquez said that he saw Tucker with the $5.00 bill in his hand and saw him exchange something and get some-

thing in return, but he did not see Tucker hand the $5.00 bill to anyone; that when Tucker returned to the car he handed six capsules to Velasquez. Appellant was not searched immediately after the alleged sale to ascertain if he had a $10 bill or $5.00 bill on his person. The attorney general's brief states: *"The transaction* was also witnessed by Police Officer Manuel Gutierrez and Deputy Sheriff Kehoe." (Italics added.) It appears that that statement is inaccurate. Police Officer Gutierrez, who was walking on the opposite side of the street, saw appellant in front of 210 North Belmont, and he saw the person, who was with Velasquez, drive the Studebaker away. Deputy Kehoe, who was in a parked car about 500 feet away, saw appellant walk to the driver's side of the Studebaker, saw appellant and Tucker standing on the sidewalk, and saw Tucker return to the car and then return to appellant. Tucker and his automobile were searched before the alleged sale and no narcotic was found. Tucker was not searched, immediately after he returned to the Studebaker, to ascertain if he then had the $10 bill or $5.00 bill—he was searched after returning to the sheriff's office. There was evidence that appellant was, and for approximately two years had been, engaged in the business of selling drop cords. Appellant was not arrested until approximately a month after the alleged sale herein. One assignment, by appellant, of misconduct on the part of the deputy district attorney is certain argument of the deputy to the jury, as follows: "Have you often wondered what a narcotic peddler looks like? There he is, right over there." The person referred to therein was appellant. Thereupon, counsel for appellant stated that he assigned the statement as misconduct. The judge said, "Objection overruled, you may proceed." Then the deputy said that he (deputy) had more sympathy for a narcotic addict who "peddles" narcotics because he has got "to peddle" to keep up his habit; there is no evidence that appellant is an addict, and "I think from the evidence here" that appellant "is really a true narcotic peddler." The deputy then said to counsel for appellant: "Do you want to assign that as error, too, counsel?" Counsel for appellant replied, "I certainly do." The judge said, "You [referring to deputy] may proceed." The question before the jury was whether appellant sold heroin on said February 27. When the deputy said that appellant was a "narcotic peddler" he implied that appellant was in the business of selling narcotics and that the alleged sale on February 27 was not the only sale made by

appellant but that he had made several other sales. There was no evidence that would justify such an implication. The prior conviction in the federal court of illegally concealing and purchasing narcotics was not a basis for such an argument. That was not a conviction of selling narcotics. Later in his argument, the deputy said that the jurors were going to believe the officers or they were going to believe appellant ''who has previously been convicted of the same type of offense.'' The offense charged herein was selling heroin, and the jurors might well have understood from the deputy's words, ''convicted of the same type of offense,'' that he meant that appellant had been previously convicted of selling narcotics. Such argument that appellant had been convicted of ''the same type of offense,'' when considered in connection with the words ''narcotic peddler,'' tended to add verity and emphasis to the deputy's positive declaration that appellant was a ''narcotic peddler'' and to his implied declaration that appellant was in the business of selling narcotics. When the deputy first said that appellant was a narcotic peddler, he did not qualify or explain the declaration in any manner. It is true that the second time the deputy said that appellant was a narcotic peddler, he prefaced his declaration with the words, ''I think from the evidence here'' etc. Such a preface, however, under the circumstances here, is not a sufficient answer to the assignment of misconduct. The evidence ''here'' did not pertain to any alleged sale other than the one of February 27. There was no evidence, with reference to that alleged sale, from which an inference could be drawn that appellant had made other sales. The deputy did not restrict his argument to a statement that in his opinion, based on the evidence, the appellant sold heroin to Tucker on February 27. The practical effect of his argument was to expand the evidence by adding thereto his own ''testimony,'' to the effect that appellant was in the business of selling narcotics. It is apparent that the argument was intended to mean that since the appellant was a narcotic peddler or in the business of selling narcotics, it is quite likely that he sold the heroin to Tucker on February 27, as charged. ▪ In *People* v. *Kirkes*, 39 Cal.2d 719 [249 P.2d 1], it was said at page 724, that the rule is well settled ''that statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct.''

Toward the close of his argument the deputy district attorney reemphasized his personal opinion in another form, as follows: ''I say this, and I say this sincerely from the bottom

of my heart: I am absolutely satisfied from the evidence here presented this defendant is guilty beyond a reasonable doubt.'' In view of his previous argument, heretofore referred to, it seems that his statement that he was ''absolutely satisfied'' that appellant was guilty was based upon evidence which included the additional evidence previously announced by him that appellant was a narcotic peddler.

There were other instances of misconduct on the part of the deputy district attorney, but they will not be discussed in detail. They are referred to for the purpose of indicating the over-all unfairness of the argument. In his argument, the deputy said: ''Mr. Rose asked why Mr. Tucker wasn't produced. . . . He knows where Mr. Tucker is.'' Mr. Rose, counsel for appellant, assigned the remark as misconduct. The judge instructed the jury to disregard the remark. The deputy also said: ''Mr. Shaffer, who was prepared to set himself up as a paragon of virtue in this community, suddenly had the bomb dropped on him. Perhaps he didn't think that it could be brought out that he had previously been convicted of a felony involving narcotics.'' Counsel for appellant asserted that the argument was improper for the reason he (counsel for appellant) had said in his opening statement that appellant had been convicted in the federal court; and it was improper for the further reason that he (counsel for appellant) had asked the judge, while the deputy was present, if counsel for appellant would be permitted to bring out the fact of prior conviction as a part of the defense. Thereupon, the judge instructed the jury to disregard the statement of the deputy. The judge stated further that counsel for appellant was correct as to what had occurred. The judge also stated that counsel for appellant had asked his opinion as to whether he would be permitted to bring out the fact of prior conviction; that the judge told him he would not have that right, but the right would be on the part of the cross-examiner.

Another instance of misconduct was when the deputy asked appellant if he knew whether Tucker was a narcotic addict. Counsel for appellant assigned the asking of the question as misconduct. The judge instructed the jury to disregard the question.

''[W]here the case is closely balanced and guilt has not been so clearly established as to render it improbable that the harmful effect of the misconduct may have turned the scales against the accused, such misconduct has consistently

been deemed ground for reversal. [Citations.]" (*People* v. *Ford*, 89 Cal.App.2d 467, 471 [200 P.2d 867].)

By reason of prejudicial misconduct of the deputy district attorney, the appellant was deprived of a fair trial.

The judgment and the order denying the motion for a new trial are reversed.

Shinn, P. J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 12, 1957. Gibson, C. J., Shenk, J., and Spence, J., were of the opinion that the petition should be granted.