[Crim. No. 7912. Second Dist., Div. Two. Aug. 30, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. LEE SANTA MARIA, Defendant and Appellant.

308

Ellery E. Cuff, Public Defender, J. Raymond Cullum and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Appellant Lee Santa Maria was charged along with codefendant William Craig, his brother-in-law, with possession of marijuana (Health & Saf. Code, § 11530). It was also alleged that appellant had previously been convicted of a felony for sale of marijuana. Craig pleaded guilty; appellant pleaded not guilty and denied the prior. The information was subsequently amended to allege the prior as a misdemeanor, whereupon appellant was rearraigned and admitted the former conviction. Appellant was found guilty after a jury trial. He made a motion for a new trial which was denied. Probation was likewise denied and he was sentenced to state prison for the term prescribed by law. Appellant has appealed from the judgment and from the denial of his motion for a new trial.

The facts viewed in the light most favorable to the prosecution show: At 4 a.m. on May 11, 1961, Officer Cude and another officer were investigating a robbery that had occurred in the Long Beach area. Two men, later identified as Craig and Santa Maria, were walking toward the Cozy Hotel. As the officers approached, the appellant and Craig looked at the officers and ran inside the hotel. The officers followed them into the hotel and noticed that the only room with the light on was apartment 1. They waited outside the door and a minute later, Craig and appellant came outside. The two men were searched and, with their consent, the apartment was entered and searched. Apparently the officers were looking for a gun but found a blackjack which was confiscated. Both Santa Maria and Craig denied owning it or knowing of its presence in the apartment. The officers accepted their explanation that it had apparently been left there by a former tenant. The officers did not find any marijuana in the apartment at that time.

At 10 p.m. Officers Shaw, Castillo and Rickard, together with Bark, a state narcotics agent, were maintaining the Cozy Hotel under surveillance. Two men were seen leaving the hotel, Craig and one Otis Harris. Both emitted an odor of marijuana, the eyes of both men were dilated, and in the opinion of Shaw, a qualified expert, both were under the influence of marijuana. Craig directed the officers to apartment 1 and they all entered. Although no narcotics were found on the persons of Craig and Harris, the officers did find a hat which contained inside its band, some packages of red capsules of a powdery substance, which was shown by a qualified expert to be a barbiturate acid derivative and

a dangerous hypnotic drug but not a narcotic as defined in the Health and Safety Code. These capsules are commonly known as ''red devils.'' It was during this search that Bark discovered the marijuana which led to the instant prosecution. In removing the top left-hand drawer of the vanity and placing it on the floor, he observed a package of Pall Mall cigarettes perched on the ledge of the runner. Inside were 56 marijuana cigarettes which, in Bark's opinion, had been rolled for resale. Several pairs of shoes were found in the closet. Inside the toe of one black shoe, Bark also found some cigarette papers known as zig zag papers and similar papers were discovered behind some books in a book rack. In Bark's opinion, these papers were used to wrap marijuana cigarettes.

Upon learning of appellant's whereabouts, Officers Shaw and Castillo went to apartment 5 and knocked on the door which was eventually opened by Santa Maria whose eyes were normal. They identified themselves as narcotics officers and appellant recognized Castillo, saying ''It's Castillo'' to a woman in the room. When Shaw asked him where he was living, Santa Maria gave another address, and when asked, ''Well, aren't you living in No. 1'' he at first denied the fact, then at last admitted living there with Craig, his brother-in-law, when the question was repeated for the fifth time. The questions were posed before Santa Maria was told the marijuana had been found. Upon being taken to apartment 1, appellant was shown the hat and admitted it belonged to him. He denied knowing of the ''red devils'' and when asked about the shoes he said they were not his and they could have been left there by someone else. He also denied knowing of the marijuana cigarettes. His clothes were thoroughly searched and no narcotics, residue of narcotics or narcotics paraphernalia were found. Shaw testified that the shoe which formerly contained the cigarette papers was tried on Craig's foot and that it appeared to fit him; however, he denied the shoe was his.

Bark described a conversation with Craig and Santa Maria. When asked who owned the shoes, Craig said he did not know, they were not his, and when asked whether they belonged to Santa Maria he said, ''I guess so.'' Appellant said nothing. When asked if the marijuana cigarettes were his, Santa Maria said: ''Ask Craig,'' and the latter replied, ''No, they are not mine.'' Bark asked him whose they were and Craig said he did not know. Bark said: ''Well, if they

are not yours they must be your brother-in-law's." Craig replied, "I guess so, I don't know." Santa Maria again said nothing. A few minutes later, appellant told Bark that the shoes were in the apartment when he moved in. The officer had a conversation with Mrs. Marchman, the landlady, whereupon he told Santa Maria that she had advised him the room was completely clean and contained no clothing at the time he rented it. Santa Maria said: "Well, they were here when I moved in." According to Mrs. Marchman, appellant had rented apartment 1 from her four days prior to May 11; rent was paid for two men and appellant was living there with Craig but he was given only one key; before moving into apartment 1, Santa Maria had been living for two or three weeks in apartment 5; when he rented apartment 1, she cleaned it out and removed a pair of black pants; she found no shoes.

Appellant does not question the sufficiency of the evidence to establish his guilt. He contends that he was deprived of his right to a fair trial because of certain errors on the part of the trial court: (1) in failing to exclude evidence of other crimes; (2) in allowing the district attorney to read to the jury the indictment and minute order of a prior conviction which was admitted by the appellant; and (3) in failing to instruct on the limited purpose for which the evidence of other crimes (other than the prior conviction) was received; and because of certain misconduct on the part of the district attorney alleged to be prejudicial.

### EVIDENCE OF OTHER CRIMES

There were numerous occasions on which the district attorney placed before the jury evidence tending to show commission of criminal offenses other than the charge of possession of marijuana. ■■■ The general rule in dealing with such evidence was set out in *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], at pages 314-315: "It is settled in this state, however, that except when it shows merely criminal disposition (*People* v. *Cook,* 148 Cal. 334, 340 [83 P. 43]; *People* v. *Glass,* 158 Cal. 650, 658 [112 P. 281]), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. ■■■ 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If

it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [Citations.] 'It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged. But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jurors is no ground for exclusion.' (*People* v. *Walters,* 98 Cal. 138, 141 [32 P. 864]; *People* v. *Ellis,* 188 Cal. 682, 689 [206 P. 753]; *People* v. *Ebanks,* 117 Cal. 652, 663 [49 P. 1049, 40 L.R.A. 269].''

▇ The evidence of the initial investigation was admissible for the purpose of showing the association of appellant with Craig. The deputy public defender offered to stipulate that Craig and appellant were sharing an apartment because, as he pointed out, of the likelihood of prejudice to appellant in showing that he and Craig were robbery suspects. The district attorney stated, ''Of course, I know you would, but we want as much of it as we can get before the jury, at least to facilitate their determining the defendant's guilt or innocence.'' The court said: ''They were not only sharing a room, but also otherwise associating with each other. The court feels that it might be relevant and admissible.'' In *People* v. *Leyva,* 187 Cal.App.2d 249 [9 Cal.Rptr. 469], the court stated (pp. 254-255): ''A person who associates with known narcotic users would be inclined to know the distinguishing features of marijuana cigarettes and marijuana seeds. Evidence of such association has been considered supportive proof that a defendant had knowledge of the presence of marijuana in his apartment. (*People* v. *Denne, supra,* 141 Cal.App.2d 499, 511 [297 P.2d 451].)''

▇ The evidence as to the finding of the blackjack by the officers presents a more serious question. Officer Cude's testimony regarding the blackjack was received over an objection which was first sustained, then overruled upon the basis of an unreported conference at the bench between the court and counsel. Presumably, the deputy's theory of admissibility was the one he subsequently advanced in argument to the jury, namely, that evidence of the finding of the blackjack was relevant because both Craig and Santa Maria denied

it was theirs and the latter claimed it must have been left there by a previous tenant which was the same explanation appellant gave when confronted with the shoes. Since the latter explanation was admittedly false, the deputy district attorney argues that this tends to establish appellant's consciousness of guilt.

█ In *People* v. *Albertson*, 23 Cal.2d 550 [145 P.2d 7], the court stated (pp. 580-581) : "Circumstantial proof of a crime charged cannot be intermingled with circumstantial proof of suspicious prior occurrences in such manner that it reacts as a psychological factor with the result that the proof of the crime charged is used to bolster up the theory or foster suspicion in the mind that the defendant must have committed the prior act, and the conclusion that he must have committed the prior act is then used in turn to strengthen the theory and induce the conclusion that he must also have committed the crime charged. This is but a vicious circle." █ Here the evidence of suspicious prior occurrences (i.e. the presence of the blackjack in the room and appellant's explanation— as in the case of the shoes—that it must have been left by a prior tenant) affords no proof whatsoever connecting defendant in any way with the charge on which he was tried, viz. possession of marijuana. It follows therefore that the admission of this evidence was error; it could serve no other purpose than to implant in the minds of the jurors the idea that these men were not only suspected of robbery but that they also possessed a dangerous weapon, a crime in itself. (Pen. Code, § 12020.)

THE READING OF THE INDICTMENT AND THE MINUTE ORDER
OF THE PRIOR CONVICTION

Appellant argues that it was error to allow the reading of the minute order to the jury, relying on Penal Code sections 1025 and 1093. The general rule is that when a defendant is charged in an accusatory pleading with having suffered a prior conviction and he is asked whether he has suffered such prior conviction and he answers that he has, "the charge of the previous conviction must not be read to the jury, nor alluded to on the trial." (Pen. Code, §§ 1025, 1093.) █ However, in a prosecution for the unlawful possession of narcotics, the People have the burden of showing that the appellant had knowledge of the narcotic character of the contraband in his possession. (*People* v. *Winston,* 46 Cal.2d 151, 158-161 [293 P.2d 40].) █ In *People* v. *Peete, supra,* 28 Cal.2d 306,

319-320, the Supreme Court disposed of the argument based on Penal Code sections 1025 and 1093 stating: ''Defendant contends that the court erred in admitting evidence of the Denton murder on the ground that section 1025 of the Penal Code provides that when a defendant who pleads not guilty has been charged with a previous conviction and admits the charge, 'the charge of the previous conviction must not be read to the jury, nor alluded to on the trial.' A previous conviction is charged, however, solely for the information of the court and the prison authorities in determining the punishment to be imposed in case of conviction. [Citations.] This section, as well as section 1093 of the Penal Code, prevents the circumvention, by reading or alluding to the admitted charge in the presence of the jury, of the rules against the admission of evidence of a previous conviction when such evidence is not relevant or admissible to impeach. [Citation.] It was not designed to exclude relevant evidence nor to prevent the impeachment of a witness by proof of conviction of a felony.''

 An argument can be made under *People* v. *Spencer*, 140 Cal.App.2d 97 [294 P.2d 997], that where knowledge is not in issue, it is error to read the prior conviction to the jury. But, in such a case as we have before us where a plea of not guilty is entered, all the elements of the People's case are in issue. It is true that appellant admitted that he was familiar with narcotics but in point of time this admission was made after the reading of the minute order. No objection was made when the minute order was read and there was no indication that lack of knowledge would not be raised as a defense. At the time the minute order was read, the public defender only wanted to make sure that the jury was aware that the prior conviction was for a misdemeanor rather than a felony as was indicated by the reading. Absent a showing that knowledge is not in issue, the district attorney should be allowed to show knowledge in his case in chief since it is a necessary element of the crime of possession. (*People* v. *Winston, supra,* 46 Cal.2d 151.) The jury was sufficiently instructed on the limited purpose for which this evidence was received. It follows therefore that the reading of the minute order and indictment to the jury to show knowledge was not error. (*People* v. *Castellanos,* 157 Cal.App.2d 36 [320 P.2d 152].)

### PREJUDICIAL MISCONDUCT

 The following question was admitted to be ''grossly improper'' by the Attorney General; ''Along with selling

cigarettes, you were even selling women there, weren't you?"
Even though this question did constitute misconduct, the
Attorney General argues that the appellant was not prejudiced
thereby because an objection to it was promptly sustained by
the trial court in the following terms: "Sustained. Let's not
burden this record with any more extraneous matter, counsel."

In *People* v. *Mulvey,* 196 Cal.App.2d 714 [16 Cal.Rptr.
821], the defendant was also charged with possession of mari-
juana. The district attorney on cross-examination of the
defendant questioned him regarding the presence of two girls
in his house. In reversing the conviction, the court stated:
"All this questioning related to immaterial matter. It could
have served no purpose other than to discredit the defendant
by suggesting immoral conduct upon his part due to the sup-
posed presence of two girls in the bedroom. Perhaps referring
to them as prostitutes was a slip of the tongue of the prosecu-
tor but we doubt it. There was no excuse whatever for the
insinuation. In this cunning fashion the prosecutor succeeded
in picturing the defendant as a person of loose morals. . . ."
(P. 721.)

The next alleged misconduct occurred when the
district attorney in oral argument stated: " [W]e have to show
the defendant knowingly possessed this narcotic, that when he
had possession of it, he knew it was marijuana. Well, I think
it's reasonable to infer, if you are going to infer, that he had
possession of it, that he knew it was marijuana because of his
prior conviction. He was convicted before for selling narcotics.
Obviously, he has handled it, dealt with it, he has sold it. He
admits selling it apparently quite regularly and on a pretty
big scale, so the obvious conclusion is that he knows the ma-
terial that is being handled is marijuana."

"Then we find the hat in there and we find this hat contains
pills and dangerous drugs and they are wrapped commercially
and there are several pills and several packages, and we find
that the narcotics are wrapped commercially and that there
is no question about them being wrapped for sale. Mr. Cullum
could argue, 'Well, yes, he just purchased those for his per-
sonal use,' but with 56 cigarettes in that package, I think the
reasonable inference is that he rolled those and was selling
them for a profit as he was doing, as he indicated, way back
in '58, . . ."

This line of argument was improper since appellant was
not charged with selling marijuana and it could have no effect
other than to prejudice the defendant's case in the eyes of the

jurors. (*People* v. *Shaffer*, 150 Cal.App.2d 287 [309 P.2d 475].) Further, the clear import of the prosecutor's argument is that appellant was still engaged in selling narcotics, even on a big scale, but there was no evidence that appellant had made sales on a "big scale" or otherwise since his prior conviction. ■ The rule is well settled "that statements of facts not in evidence by the prosecuting attorney in his argument to the jury constitute misconduct." (*People* v. *Kirkes*, 39 Cal.2d 719, 724 [249 P.2d 1]; *People* v. *Shaffer, supra*, p. 294.)

■ Respondent argues that the above misconduct cannot be here reviewed since the deputy public defender failed to assign misconduct on the part of the prosecutor at the time the argument was made. In *People* v. *Perez*, 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617], the Supreme Court answered this argument as follows (p. 248) : "The refusal to consider misconduct raised for the first time on appeal would, in a case where the evidence is closely balanced, result in a possible miscarriage of justice [citations], . . ."

In the instant case, as in *Perez,* a close question is presented as to appellant's guilt. The case against appellant consists mainly of the circumstantial evidence that appellant rented the room in which the marijuana was found and certain admissions by silence. ■ These alleged admissions by silence constitute the weakest kind of evidence. We cannot say that appellant's silence in the factual context of the instant case indicates anything other than a desire to protect his brother-in-law.

The brother-in-law Craig, although already convicted of the possession of marijuana and committed to the Youth Authority, admitted that he was entirely responsible for the presence of the narcotics in the room and that appellant had no knowledge of such presence. This testimony by Craig is supported by the fact that just prior to the time of arrest, it was determined that Craig's eyes were dilated and he smelled of marijuana. In the opinion of a qualified expert witness, Craig was under the influence of marijuana. In contrast no such effects were observed in connection with appellant; no contraband was found on appellant's person nor in the room in which he was found by the officers. Craig admitted that the shoes in which the cigarette paper was found were his and when tried on, they fit him.

■ Further, there were no instructions given which would show the limited purpose for which evidence of other

crimes (other than the prior conviction) was admitted. While such instructions were not required to be given by the court *sua sponte,* the effect of the absence of such instructions was to increase the likelihood that appellant did not receive a fair and impartial trial.

"It is true the jury had an opportunity to observe the demeanor and character of the witnesses and may have had reason to return the verdict herein irrespective of the errors committed during the trial. As to this, of course, we can say nothing. But from the mere record, as we read it however, the errors may have turned the scale in favor of the prosecution. When a defendant is denied that fair and impartial trial guaranteed by law, such procedure amounts to a denial of due process of law (*Powell* v. *Alabama,* 287 U.S. 45, 52 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527])." (*People* v. *Perez, supra,* 58 Cal.2d 229, 250.)

The judgment and the order denying defendant's motion for a new trial are, and each is reversed.

Ashburn, J., and Herndon, J., concurred.